**UNITED STATES of America,** Appellee,

v.

**George B. ROBBINS, Defendant-Appellant.**

**No. 112, Docket 29876.**

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1965.

Decided Dec. 23, 1965.

Kaufman, Circuit Judge, dissented.
See also, D.C., 223 F.Supp. 728.

Peter K. Leisure, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, Max Wild and Otto G. Obermaier, Asst. U. S. Attys., New York City, on the brief), for appellee.

Harris B. Steinberg, New York City (Stanley S. Arkin, New York City, of counsel), for appellant.

Before MEDINA, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Appellant appeals from a judgment of conviction for violation of 42 U.S.C. § 1400s(a) which provides:

"(a) Whoever makes a false statement or representation of a material fact knowing it to be false, or knowingly fails to disclose a material fact, to obtain or increase for himself or for any other individual any payment under this subchapter shall be fined not more than $1,-000 or imprisoned for not more than one year, or both."

Appellant was sentenced to imprisonment for ninety days and fined $6000.

The offense for which appellant was convicted was the making of false statements on claim forms in order to obtain benefits under the Temporary Extended Unemployment Compensation Act of 1961, 42 U.S.C. § 1400l et seq.

In relevant part Question 9 on the claim form reads, "During the week claimed * * * did you work or earn wages of any kind?" Appellant answered this question "No."

The government presented evidence to show that appellant was employed as executive vice-president of the National Exhaust Purifier Company at a salary of $250 a week during the period for which he claimed unemployment benefits. The evidence on this issue was ample to support the jury's verdict and if this were all there was to the case it would be unnecessary for us to consider it further. But during the same period appellant also received payments for certain days of service as an Air Force reserve officer. The judge charged the jury that they should convict the appellant if they found that he had made false statements with respect to *either* the payments made to him by National Exhaust *or* by the Air Force. If the two issues had been submitted to the jury separately, as, of course, they could have been, see Rule 49, Federal Rules of Civil Procedure, there would now be no difficulty with the verdict. But since the two issues were presented in the alternative, it is impossible to ascertain the exact basis for appellant's conviction. The jury may have found him guilty only with respect to the Air Force payments. In order to uphold the result in the lower court we must find, therefore, that the conviction is supportable on the ground that appellant's statements with respect to the Air Force payments were violative of the statute. Stromberg v. People of State of California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

Appellant lived in Yonkers, New York and filed his claims for unemployment compensation with the Yonkers office of the New York State Department of Labor. Payments were made, however, and eligibility determined by the State of Connecticut where appellant had been most recently employed at the time he applied for unemployment compensation.[1] The claim forms that appellant filled out and submitted were forwarded to Connecticut.

The first issue that we must consider is whether the jury could properly find that appellant's periods of military service were "work" and the payments received by reason of such service were "wages" earned within the meaning of Question 9 on the claim forms. The meaning of these terms is not, for the purposes of this case, to be found in a dictionary definition or in any technical or legal usage. What we are interested in is the meaning that Robbins was justified in attaching to them. "To work" is, in general usage, to have employment, to have a job. But no one, we believe, would be likely to reply affirmatively to the question whether he was employed or had a job if his only "work" consisted of a few hours a month of reserve duty. In everyday speech "wages" are earned by reason of employment. One is paid wages if he "works" and has a "job." Robbins might well not have considered payments received for reserve service as

wages earned.[2] The vagueness or ambiguity of the question makes it impossible, in our opinion, to hold that Robbins' answers were knowingly false.

As a matter of fact it appears that in Connecticut (as well as in New York) there is a serious question as to whether payments for service in the reserves would have made appellant ineligible for unemployment compensation. We cannot say, on the basis of the material available to us, that they would have. If such payments would not have made appellant ineligible, then his negative answer to Question 9 is not material as far as payments for reserve service are concerned. Therefore, by failing to establish that revealing the payments for reserve service would have resulted in ineligibility, the government has failed to establish one of the express requirements for a finding of violation of the statute under which conviction was had.

Moreover, if the assumption adopted in the last paragraph is mistaken and if Connecticut would have held appellant ineligible for unemployment compensation by reason of the payments he received for reserve service, appellant's answer to Question 9 still could not be held to be knowingly false. Even the authorities available to us leave us completely in doubt as to the position Connecticut would take. If the question be read, as it should be read, to ask whether the claimant had done any work or earned

---

1. Title 42 U.S.C. § 1400m(c) provides in relevant part:

   "[T]he terms and conditions of the State law * * * under which an individual most recently exhausted his rights shall apply to his claim for temporary extended unemployment compensation and to the payment thereof."

2. My dissenting colleague relies extensively on the words "other payments in any form" in the phrase "any BOARD and ROOM, TIPS, or any OTHER PAYMENTS in any form." The language used suggests to me that "other payments in any form" is intended, like board and room and tips, to refer to goods or services received in lieu of money.

   The testimony of Dwyer, to which my dissenting colleague refers, is in relevant part as follows:

"The Witness: * * * I asked him why he hadn't come in to submit his claim the week before, and he said that he had traveled to Robins Air Force Base in Georgia to get back on active duty—this is as I recall it—as an Air Force colonel.

He explained that he was a colonel in the Air Force, he was trying to get on active duty, and that was the reason he didn't come in.

In the course of the interview I asked him if he received pay, military pay for this service, and he said no."

It seems to me quite clear that the witness asked Robbins whether he was paid for traveling to the Air Force base in Georgia and back. It is practically certain that Robbins' answer to this question was truthful.

any wages which would change his eligibility for unemployment compensation, the government has failed to establish that appellant's answers are knowingly false with respect to reserve service and payments therefor, because appellant could not know or ascertain whether payments of this type would make him ineligible, nor could the jury, on the testimony submitted.

We conclude, therefore, that the conviction must be reversed.

In view of our disposition of the case, we need not pass upon the other points raised by appellant.

Reversed and remanded.

MEDINA, Circuit Judge (concurring):

I concur but solely on the ground that, in the context of legislation providing benefits for the unemployed, the performance of military reserve service is not "work" and the payments received by reason of such service are not "wages of any kind." Therefore, the answers were not "false statements" within the meaning of 42 U.S.C., Section 1400s(a). This remains true, in my opinion, even if a New York or Connecticut administrative agency ruled that an applicant was or was not to be disqualified from receiving benefits if he had received, during the period in question, sums of money for the performance of reserve military service. I see no distinction between jury service and the performance of military reserve service. Serving on juries, again in the context of legislation providing benefits for the unemployed, is not "work" nor are jury fees "wages of any kind."

Moreover, a conviction for having made a false statement that turns out not to be false cannot stand, even if the person convicted thought the statement was false when he made it.

KAUFMAN, Circuit Judge (dissenting):

I would affirm.

When Robbins applied for unemployment compensation, he was given an information booklet which he admitted reading. In part, it stated:

> Each time you report to file a claim you MUST inform the clerk of any EARNINGS which you had during the week or weeks for which you are claiming benefits. This includes *in addition to wages*, any BOARD and ROOM, TIPS, or *any OTHER PAYMENTS in any form* which you receive for having worked. (Emphasis added.)

In response to Question 9 on the information form: "During the week claimed * * * did you work or earn wages of any kind?"; he answered "No."

Robbins answered Question 9 falsely within the meaning of 42 U.S.C. § 1400s (a). Robbins was aware from the question asked and the information he had been given that the authorities were seeking to determine if he had sufficient other income to disqualify him from receiving unemployment compensation. While I agree that there is no dictionary to tell us if military reserve compensation is paid for "work," it seems to me that given the broad disclosure purpose of the question asked of Robbins, he must have understood that with the exception of very limited exemptions, he was directed to report *all* of his income other than gifts.

Furthermore, Robbins' negative response to Question 9 was not merely false, it was materially false. Under the applicable Connecticut law, it is unclear whether reserve duty payments disqualify the recipient from unemployment compensation. It may well be that it would be preferable for the Connecticut authorities to determine this with finality; but, Robbins' false statement eliminated this issue from consideration when his application was processed. Robbins' misstatement was therefore material; it deprived the Connecticut Department of Labor of the opportunity to decide, in assessing his eligibility, whether military payments disqualify an applicant from obtaining unemployment compensation.

Moreover, when we view the government's evidence in its most favorable light, as we must on appeal, United States v. Robbins, 340 F.2d 684 (2d Cir. 1965) ; United States v. Kahaner, 317 F.2d 459 (2d Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963), the pattern of Robbins' evasiveness takes on real meaning. It is relevant, therefore, to note that Dwyer, an unemployment insurance claims examiner in the Yonkers office of the New York State Department of Labor, testified that, "In the course of the interview I asked him [Robbins] if he received pay, military pay for this service, *and he said no.*" (Emphasis added.) This negative response to Dwyer's question demonstrates Robbins' firm determination to conceal these payments despite the fact that Dwyer considered them so pertinent as to merit specific inquiry. In addition, at trial, the government shattered what appears to be a flagrant attempt at deception. Despite the testimony on direct examination of an employee of National Exhaust Purifier Company that payments to Robbins were not wages but made in satisfaction of a "loan," on cross, she acknowledged typing minutes of a Board of Director's meeting containing the resolution that "Colonel G. B. Robbins * * * be put on the payroll of the corporation * * *."

In light of this evidence, I believe it is unfortunate but not fatal in this case that the jury was charged to determine Robbins' guilt on the basis of two failures to report earnings without being required to specify whether he lied as to both or only as to one. The jury could have properly convicted Robbins on either ground. There is abundant evidence demonstrating his effort to conceal in excess of $3,000 in salary at a time when he was also receiving the less than insignificant sum of over $400 for active and inactive reserve duty. These facts confirm the existence of a preconceived, deliberate and common plan to perpetrate this not insubstantial fraud upon the Connecticut Department of Labor by withholding any income or payments, no matter what their source. We are not dealing with a case of the casual omission of a "jury fee."