529 P.2d 774

**Melvin CLAY, Claimant-Appellant,**

v.

**CROOKS INDUSTRIES, Employer, and Department of Employment, Defendant-Respondent.**

**No. 11401.**

Supreme Court of Idaho.

Dec. 20, 1974.

Jeffrey Howe, Western Idaho Legal Aid, Inc., Boise, for claimant-appellant.

W. Anthony Park, Atty. Gen., R. LaVar Marsh, Raymond N. Malouf, Asst. Attys. Gen., Boise, for defendant-respondent.

BAKES, Justice.

Claimant John Melvin Clay has appealed from the order of the Industrial Commission denying him unemployment compensation benefits for which he applied after leaving a job with Crooks Industries. Clay had been employed by Crooks Industries at various times over a fifteen year period, but he had last begun work for it during August of 1971 when he was hired, according to the testimony of John Crooks, the owner of Crooks Industries, as a "shop engineer" whose "duties were of a much higher nature than that of a welder or machinist because of his inventive mind." Clay, who considered himself as, and was considered by Crooks to be an inventor, testified that it was his understanding when he was hired that after he helped Crooks Industries complete the construction of a machine shop building project he would be given an opportunity to use some of his working time while in Crooks' employ to pursue certain independent inventive projects of his own. Crooks testified that when he hired Clay the possibility was discussed and he told Clay that after the completion of the building project they would endeavor to pursue some inventive ideas together and, in the meantime, Clay had consented to work for him on the building during the completion of the building project.

Clay continued working for Crooks until March of 1973 when the building project was nearing completion. During that time Clay was employed primarily on the building project, work which Crooks described as "of a more humble nature than his qualifications." As the building project neared completion, it appeared to Clay that he would not soon be given the opportunity to pursue his inventive bent as he thought he would when he agreed to go to work for Crooks. As a result he requested that his name be removed from the payroll until this question concerning the terms of his employment could be resolved. Crooks testified that because of adverse business conditions he would not be able to allow Clay to work on his own inventive projects. Clay never returned to work for Crooks after this, and he later filed a claim for unemployment compensation because he was then without a job.

A hearing was held by the Department of Employment before one of its appeals examiners on the issue of whether Clay had left work for a good cause. Clay and Crooks were the only two witnesses at that hearing. After the hearing the examiner denied Clay's claim.

An appeal was taken by Clay to the Industrial Commission. At the beginning of the hearing before the Industrial Commission, its chairman told Clay, "Now, the purpose of this hearing is to give you an opportunity to put into the record anything that you may have in addition to what took place in the hearing before or anything that you wish to rebut in the transcript." Clay, who was the only witness to appear before the Industrial Commission, explained that because Crooks Industries had not afforded him the opportunity to pursue the inventive projects which he felt that they had agreed he would be allowed to pursue, he was entitled to leave his job with them. Clay's testimony was the only oral testimony before the Industrial Commission. The commission considered that testimony and the transcript of the proceedings before the appeals examiner and denied his claim. This appeal followed.

■ Eligibility for unemployment compensation benefits is determined under I.C. § 72-1366, which provides:

"72-1366. *Personal eligibility conditions.* —The personal eligibility conditions of a benefit claimant are that—

. . . . . .

"(f) His unemployment is not due to the fact that he left his employment voluntarily *without good cause* . . . . (Emphasis supplied).

. . . . .

"(h) In determining . . . whether or not work is suitable for an individual, . . . experience, training, past earnings, . . . and other pertinent factors shall be considered. No employment shall . . . be deemed suitable and benefits shall not be denied to any otherwise eligible individual for refusing to accept new work or to hold himself available for work . . . :

. . . . . .

"(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered;"

If Clay had been offered a position as a shop engineer who would be given an opportunity to pursue his own inventing projects and then was later denied the opportunity to pursue these projects, it would constitute a change to employment conditions substantially less favorable than those prevailing for similar work as a shop engineer with the opportunity to pursue his own inventions, and thus the work would not be "suitable" within the meaning of I.C. § 72-1366(h). Our previous decisions tend to suggest that an employee has not left work voluntarily without good cause when the conditions were unsuitable when compared to the conditions of the job as originally offered, *see* Saulls v. Employment Security Agency, 85 Idaho 212, 377 P.2d 789 (1963), and Roby v. Potlatch Forests, 74 Idaho 404, 263 P.2d 553 (1953), and we so hold now.

The question then becomes: Does the record support the Industrial Commission's findings that Clay left his employment voluntarily without good cause? The Industrial Commission made the following finding of fact in this regard:

### FINDING OF FACT II

" . . . When he [Clay] was employed in 1971, he discussed with the employer the possibility of devoting some of his time to research and development at the employer's shop. No specific agreement was reached, but the employer acknowledged the possibility that arrangements could be made eventually so that the claimant could spend part of his time on research and continue to receive his regular salary. . . ." (Tr. pp. 18–19).

Based upon this and other findings of fact, the Industrial Commission made the following conclusion of law:

### CONCLUSION OF LAW II

" . . . The claimant and the employer never had a definite agreement to the effect that the claimant would eventually be allowed to do research and development work . . . [T]he failure to arrive at such an agreement did not constitute a breach of the employment agreement by the employer, . . . [and] the claimant's reason for leaving his employment was not of such a compelling nature as to cause a reasonable person to voluntarily choose to become unemployed." (Tr. p. 20).

■■ This finding of fact and conclusion of law cannot be upheld as supported by substantial, competent evidence if only Clay's live testimony before the commission is considered. However, I.C. § 72–1368(g) provides that when the commission is hearing appeals from the Department of Employment appeals examiner that "[t]he record of the proceedings before the appeals examiner shall become part of the record of the proceedings . . . before the board with respect to the evidence ad-mitted into testimony received before the appeals examiner." And while this Court is not bound by the view of the testimony taken by the Industrial Commission where they have not observed the witnesses themselves but are merely reviewing the record of the appeals examiner, Phipps v. Boise Street Car Co., 61 Idaho 740, 107 P.2d 148 (1940), nevertheless, considering the testimony given before the appeals examiner there is substantial, competent evidence to support both his conclusion that Clay had no specific agreement with Crooks about doing research and development work and thus left work without good cause, and the Industrial Commission's affirmance of the appeals examiner's conclusion. Accordingly, where there is substantial evidence to support it, the finding of the Industrial Commission and the order based upon it will not be disturbed on appeal. Levesque v. Hi-Boy Meats, Inc., 95 Idaho 808, 520 P.2d 549 (1974).

Order affirmed.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.