754

589 P.2d 89

**Robert L. MEYER, Claimant-Appellant,**

v.

**SKYLINE MOBILE HOMES, Employer,
and Department of Employment,
Defendants-Respondents.**

No. 12566.

Supreme Court of Idaho.

Jan. 4, 1979.

Dennis Gibala, Boise, for claimant-appellant.

Wayne L. Kidwell, Atty. Gen., R. LaVar Marsh, Deputy Atty. Gen., Donald L. Harris, Asst. Atty. Gen., Boise, for defendants-respondents.

BAKES, Justice.

This case presents questions arising under Idaho's Employment Security Law. I.C. §§ 72–1301 to –1380. Claimant appellant Robert L. Meyer challenges rulings of the Industrial Commission that he refused an offer of suitable work without good cause and that he willfully withheld a material fact (his refusal of the offer) in order to obtain unemployment insurance benefits. Meyer also disputes the commission's finding that he was employed full time as of September 1, 1976. Finally, Meyer requests attorney fees on appeal, pursuant to I.C. § 12–121. We affirm the commission's finding with respect to Meyer's commencement of full time work. However, we reverse the conclusions that the work which Meyer refused was suitable and that his failure to report the refusal was willful, and we remand the case to the Industrial Commission for reconsideration of these issues. The matter of attorney fees is deferred until the proceedings below are concluded.

I

Meyer worked for several years as a traveling mobile home serviceman for Skyline Mobile Homes (Skyline). The job required that he regularly be away from his wife and two young sons for a week at a time. According to Meyer his continual extended absences led to a divorce in June of 1974, with his former wife taking custody of the children.

In July of 1975 Meyer left his position with Skyline in favor of local employment that did not involve traveling. He changed jobs so that he could spend more time with his then fiancee and so that he could hopefully obtain custody of his sons. After he had worked at his new job for about a month, Meyer was laid off for no cause of his own.

In August of 1975 Meyer filed for and began receiving unemployment benefits. During the next four or five months he worked part time doing local service jobs for Skyline and reported his earnings on the Department of Employment's (DOE) weekly certification forms. Meyer also obtained legal custody of his two sons and remarried during this period.

In January or February of 1976, Skyline offered Meyer full time employment as a local serviceman, and Meyer accepted. However, the following day Skyline told him that the job would require traveling, like the position he had previously held. Meyer declined Skyline's revised offer, fearing that extensive travel would again jeopardize his family life. In completing the DOE's weekly certification form for the week of Skyline's offer, Meyer answered "no" to the question, "Were you offered any work during the week (either for that week or any future date) which you refused?"

In August of 1976, a DOE claims examiner determined that Meyer had refused an offer of suitable work without good cause and had willfully failed to report a material fact in order to obtain benefits. I.C. § 72–1366(f).[1] Meyer objected to the claims examiner's determinations, and a DOE appeals examiner held a hearing. Meyer testified that he considered Skyline's offer of traveling service work unsuitable because traveling had destroyed his first marriage and would certainly also disrupt his second marriage and prevent him from adequately caring for his children. He indicated that he had not reported his refusal of the Skyline offer in response to the question on the weekly certification form because he understood the question to ask only whether he had refused an offer of suitable work. The DOE appeals examiner affirmed the determinations of the claims examiner that Meyer had refused suitable work without good cause and had willfully withheld a material fact to obtain benefits.

Meyer appealed to the Industrial Commission from the decision of the DOE appeals examiner. The commission's referee, like the appeals examiner, concluded that Meyer had refused suitable work without good cause and had willfully withheld a material fact to obtain benefits. In the course of his decision, the referee found that on September 1, 1976, Meyer started working full time as a local salesman for Western States Mobile Homes. The Industrial Commission adopted the referee's opinion as its own.

Meyer has appealed to this Court from the decision of the Industrial Commission. He contends that the commission erred in concluding that he refused suitable work without good cause and that he willfully withheld a material fact to obtain unemployment benefits. He also challenges the finding that his full time work at Western States Mobile Homes began on September 1, 1976. Finally, Meyer requests attorney fees on appeal, pursuant to I.C. § 12–121.

## II

Meyer attacks the commission's determination that he refused an offer of suitable work without good cause. He argues that there was no bona fide offer; that if there was an offer, the work was unsuitable; and that if suitable work was offered, he had good cause to refuse it. We address these contentions in turn.

The commission found that Skyline initially offered Meyer a full time job doing local service work and that Meyer accepted the offer. The commission further found that on the following day Skyline informed Meyer that the job would involve extensive travel and that Meyer then declined the work offered. The commission's finding that Skyline offered work to Meyer is supported by substantial unequivocal evidence

---

1. "72–1366. PERSONAL ELIGIBILITY CONDITIONS [EFFECTIVE UNTIL JANUARY 1, 1978.]—The personal eligibility conditions of a benefit claimant are that—

. . . . .

"(f) His unemployment is not due to his failure without good cause to apply for available suitable work as directed by a representative of the director or to accept suitable work when offered to him . . . ."

and will not be disturbed on appeal. *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978); *Hutchinson v. J. R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977).

■ Meyer contends that the work Skyline offered was unsuitable. He bases this contention upon two distinct provisions of I.C. § 72–1366(g).[2] Meyer first asserts that Skyline's offer was unsuitable under I.C. § 72–1366(g)(2). This statutory basis for establishing the unsuitability of an offer of work requires a comparison between the terms of the work offered and the terms prevailing for similar work in the area in which work is offered. We think that travel is an essential aspect of the work which was offered in the instant case, not a mere condition of the employment. Accordingly, the comparison made must be between the terms of the traveling service position with Skyline and the terms prevailing for other traveling service positions in the locality. The record is devoid of evidence necessary to make such a comparison. Inasmuch as the burden lay upon Meyer to prove his eligibility for benefits, this argument must fail. *See Pyeatt v. Idaho State Univ.,* 98 Idaho 424, 565 P.2d 1381 (1977).

Meyer asserts, however, that the conditions of the traveling service offer were substantially less favorable than those prevailing for similar work by virtue of the fact that Skyline had previously offered Meyer a local service job. In support of this proposition, he cites *Clay v. Crooks Industries,* 96 Idaho 378, 529 P.2d 774 (1974). The claimant there had accepted a position beneath his qualifications, assertedly upon an agreement with the employer that the claimant would later be permitted

to engage in activities appropriate to his talents. When the job did not evolve as the claimant anticipated that it would, he quit. We held that if the alleged agreement were established, the claimant would not be disqualified for having left work voluntarily without good cause because the conditions of the job he quit would have been unsuitable in comparison with the original offer. The claimant in *Clay* accepted a job beneath his abilities solely because he thought that the initially unsuitable work would later become suitable. We held that if his expectation of improvement was justified, he should not be punished for undertaking unsuitable work for a time. Meyer's situation is not analogous and his reliance upon *Clay* is misplaced.

■ We turn to Meyer's second argument under I.C. § 72–1366(g). Meyer maintains that the commission failed to give adequate consideration to the distance from his residence of the work that Skyline offered and the risk that the extended periods on the road required of him by the job would precipitate the disintegration of his second marriage and hamper his ability to care for his sons from his prior marriage. We agree.

The commission's findings indicate that, as a result of extensive travel in his first job with Skyline, Meyer and his first wife were divorced in 1974. In December, 1975, Meyer married his second wife. In February of 1976, Meyer declined Skyline's offer of full time traveling service work because he believed his second wife would leave him if he traveled extensively. He also feared that he might lose custody of his two boys from the prior marriage.

2. "72–1366. PERSONAL ELIGIBILITY CONDITIONS [EFFECTIVE UNTIL JANUARY 1, 1978.]—The personal eligibility conditions of a benefit claimant are that—

.    .    .    .    .

"(g) In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and

other pertinent factors shall be considered. No employment shall, in any event, be deemed suitable and benefits shall not be denied to any otherwise eligible individual for refusing to accept new work or to hold himself available for *work under any of the following conditions:*

.    .    .    .    .

"(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered;
.    .    .    ."

The commission concluded that the work offered was suitable, "[c]onsidering the factors outlined in Idaho Code § 72–1366(g)." However, absent from the commission's suitability analysis is consideration of the distance between Meyer's residence and the work Skyline offered. Although the role of distance ordinarily becomes an issue where employees commute on their own time and at their own expense between their homes and fixed work places, nothing in I.C. § 72–1366(g) confines consideration of the distance factor to the commuter context. *See, e. g., Johnson v. Employment Security Agency,* 81 Idaho 560, 347 P.2d 764 (1959). We hold that distance must be considered in assessing the suitability of jobs which, by their nature, require traveling. If a reasonable person in Meyer's position who truly desired to work would have considered the Skyline offer unacceptable, the Skyline offer would not have been an offer of suitable employment. It will be necessary for the commission to reconsider the suitability issue in this light.

The significance that we have attached to Meyer's marital and parental interests is not at odds with our decisions in *Pyeatt v. Idaho State University,* 98 Idaho 424, 565 P.2d 1381 (1977), and *Flynn v. Amfac Foods, Inc.,* 97 Idaho 768, 554 P.2d 946 (1976). The question in those cases was whether the benefit claimants had good cause to *quit* their jobs; disqualification for benefits was upheld on appeal despite assertions that familial considerations were at stake. However, the legislature has concluded that the standards for eligibility may be less demanding when a claimant declines an offer for a new job than when he or she elects to quit an existing job. *See, e. g.,* I.C. § 72–1366(c), –(h) and –(i).

■ Under the view we have taken above, the commission may nevertheless reaffirm its conclusion that the traveling service work that Skyline offered to Meyer

was suitable for him. Therefore we must consider Meyer's next argument. Meyer asserts that because his refusal of the work was based on "good cause," it would still not disqualify him from receiving benefits. Under I.C. § 72–1366(f) [3] a claimant is ineligible only if he or she has refused an offer of suitable work without good cause. Meyer maintains that the commission defined good cause too narrowly. We agree that the commission's approach was too restrictive.

■ The commission held that Meyer's fear of "severe marital disharmony" could not constitute good cause for refusing the Skyline offer because such fear "is purely personal in nature and unique to the employee." The commission relied upon the first portion of the following excerpt from *Boodry v. Eddy Bakeries Co.,* 88 Idaho 165, 397 P.2d 256 (1964):

> "A construction of 'good cause' as used in I.C. § 72–1366 must not be extended to include purely personal and [subjective] [4] reasons which are unique to the employee—*it must require that such cause is not a condition which by common knowledge is usual where accompanied by minor irritations.* See *Burroughs v. Employment Security Agency,* 86 Idaho 412, 387 P.2d 473." *Id.* at 170, 397 P.2d at 259 (emphasis added).

The commission's opinion omitted the italicized language, which clearly qualifies the first clause. The standard articulated in *Boodry* was based upon *Burroughs v. Employment Security Agency,* 86 Idaho 412, 387 P.2d 473 (1963). The following quote from *Burroughs* sheds light upon the proper scope of good cause:

> " 'In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be

---

3. *See* n. 1, *supra.*

4. The word actually printed in the *Boodry* opinion is "objective," not "subjective." However, it is apparent from the context that the Court almost certainly meant "subjective." Our sub- sequent decisions certainly have read *Boodry* in this way. *See, e. g., McMunn v. Department of Pub. Lands,* 94 Idaho 493, 491 P.2d 1265 (1971); *Clark v. Bogus Basin Recreational Ass'n,* 91 Idaho 916, 435 P.2d 256 (1967).

some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive; . . . .'" *Id.* at 414, 387 P.2d at 474.

The *Burroughs* guidelines are addressed to the gravity of the circumstances advanced as good cause for leaving a job. The purely personal and subjective reasons declared inadequate in *Boodry* are simply the "minor irritations" that do not satisfy the reasonable person test announced in *Burroughs*. Counsel for Meyer has aptly suggested that if personal reasons could not constitute good cause, there would be no such thing as good cause. Although the "purely personal and subjective" language has been used as a shorthand of sorts in some cases, the test used in determining whether good cause is present continues to be whether a reasonable person would consider the circumstances resulting in a claimant's unemployment to be real, substantial, and compelling. *See e. g., Flynn v. Amfac Foods, Inc., supra.*

Although the commission took too narrow a view of good cause, we nevertheless conclude that reconsideration of that issue will not be necessary under the facts of this case. The lack of suitability argument presented here by appellant is essentially the same as his argument on good cause. Therefore resolution of the suitability issue is dispositive of the question of good cause, even though we agree with Meyer's assertion that suitability and good cause are not always coextensive concepts. It is clear that if the work Skyline offered was unsuitable, Meyer had good cause to refuse it. *Cf. Clay v. Crooks Indus., supra* (good cause to quit where job was unsuitable); *Lauder v. Board of Review of Indus. Comm'n*, 29 Utah 2d 121, 506 P.2d 50 (1973) (same, by implication).

It is equally clear that good cause to refuse may exist even where the work offered is suitable; otherwise the good cause language used by the legislature would become mere surplusage, contrary to general principles of statutory construction. *See, e. g., Norton v. Department of Employment*, 94 Idaho 924, 500 P.2d 825 (1972). However, when suitable work is offered, good cause to refuse the offer ordinarily must stem either from a temporary emergency or from some intolerable aspect of the particular job offered that is not considered in determining the suitability of the work. *See Swanson v. Minneapolis-Honeywell Regulator Co.*, 240 Minn. 449, 61 N.W.2d 526 (1953). For example, a person called to the bedside of a mortally stricken relative might well have good cause to decline an offer of otherwise suitable employment that required that he or she begin work immediately. In Meyer's case, however, there is nothing to indicate that a temporary emergency or factors not considered in the suitability determination accounted for his refusal of Skyline's offer.

### III

The next issue presented by this appeal stems from the commission's determination that Meyer willfully withheld a material fact in order to obtain benefits. This determination was based upon Meyer's negative answer to the question asking whether he had refused an offer of work during the week in which he in fact declined Skyline's offer of full time employment. If the finding of willful withholding was correct, then under I.C. § 72–1366(j) [5] Meyer was ineligible to receive benefits for the fifty-two weeks following August 22, 1976—the date on which the determination was made that he willfully failed to report a material fact

---

5. "72–1366. PERSONAL ELIGIBILITY CONDITIONS [EFFECTIVE UNTIL JANUARY 1, 1978.]—The personal eligibility conditions of a benefit claimant are that—

. . . . .

"(j) A benefit claimant shall not be entitled to benefits if it is determined that he has wilfully made a false statement or representation or

wilfully failed to report a material fact in order to obtain said benefits for a period of fifty-two (52) weeks from the date of said determination and said claimant shall be liable to repay to the fund any sums received as a result of said false statement, misrepresentation or failure to report a material fact.

. . . . ."

in order to obtain benefits. Furthermore, if the commission should determine on remand that the work Skyline offered to Meyer was suitable, then Meyer would be liable under I.C. §§ 72–1366(j) and 72–1369 to repay (or have deducted from future benefits to which he might become entitled) all of the benefits that he received as a result of his failure to report the Skyline offer.

## A

Meyer contends on appeal that three elements must be shown to establish his transgression of I.C. § 72–1366(j): (1) willful withholding of (2) a material fact (3) in order to obtain benefits. He asserts that the record is inadequate to support the commission's conclusions with regard to any of these elements. We consider the record fully adequate as to the second and third elements. However, because it appears that the commission may have misconstrued the requirement that a claimant's failure to report be willful, further findings on that issue will be necessary.

■■■■ Meyer does not contest, and under these circumstances the commission was certainly justified in finding, that he was in fact attempting to obtain benefits at the time that he failed to report the Skyline offer. However, Meyer contends that the failure to report his refusal of the Skyline offer was not a failure to report a material fact. Arguing that the work offered was unsuitable or that if the work was suitable he had good cause to refuse it, Meyer maintains that his refusal of the offer was therefore not a material fact because it did not affect his right to benefits. However, even if the commission ultimately agrees that the work Skyline offered was unsuitable, we do not think this precludes the commission finding that Meyer's refusal of the offer was the concealment of a material fact. In our view, a fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination.

Meyer's contention that a claimant may misstate or withhold information if an accurate and full disclosure would not alter his or her right to benefits has apparently been accepted by one court. *See Fleury v. State*, 114 N.H. 528, 323 A.2d 919 (1974). However, such a rule would subvert the process by which the legislature has declared eligibility must be determined. Under I.C. § 72–1368(c) a DOE claims examiner must review each claim for benefits. Clearly, the legislature intended the DOE—not the claimant—to make the initial determination of eligibility and benefit levels. The impact of a particular fact upon a claimant's eligibility may present difficult questions of law. The DOE should be able to assume that benefit claimants are reporting all the information solicited from them fully and accurately. A complete and unqualified disclosure can best be promoted by defining materiality to include any information that is relevant to the determination of a claimant's right to benefits. Courts and judges elsewhere have viewed materiality in much the same way that we do here. *See United States v. Robbins*, 354 F.2d 741 (2d Cir. 1965) (Kaufman, J., dissenting); *Beadnell v. United States*, 303 F.2d 87 (9th Cir. 1962); *Industrial Comm'n v. Bennett*, 166 Colo. 101, 441 P.2d 648 (1968). We uphold the commission's determination that Meyer failed to report a material fact.

## B

Meyer argues further that even if the fact withheld was material, it was not done "willfully," and therefore under I.C. § 72–1366(j) he is not disqualified from receiving benefits. The difficulty with the commission's conclusion that Meyer willfully failed to report the Skyline offer is that it seems to equate willfulness with gross negligence, rather than with intentional or knowing conduct. The decision of the DOE appeals examiner followed a hearing during which the examiner questioned Meyer in some detail. Meyer maintained throughout his testimony that he understood the question on the weekly certification form to ask whether he had refused an offer of *suitable* work. He explained that he had marked "no" because he considered the traveling job with

Skyline unsuitable in light of his family circumstances.

The examiner's findings reflect that he found Meyer's testimony credible. Despite finding that Meyer had misunderstood the question on the weekly certification form, the examiner concluded that Meyer willfully failed to report his refusal of work. It seems clear that the appeals examiner based his decision not on what Meyer actually believed the question asked, but rather on what the examiner concluded Meyer should have understood the question to ask.

On Meyer's appeal from the DOE examiner's unfavorable rulings, an Industrial Commission referee held a second hearing. Meyer repeated much of his earlier testimony concerning the unsuitability of the work Skyline offered and his interpretation of the question on the weekly certification form. The referee prepared findings, conclusions, and an order, and the commission adopted these as its own. The findings make no mention of Meyer's interpretation of the question regarding refusal of work. The appeals examiner found in substance that Meyer misunderstood the question on the certification form, and the commission through its referee made no clear finding to the contrary. We therefore think it likely that the commission, like the appeals examiner, based its conclusion of willful withholding upon the notion that Meyer must be held to know that which he should have known through the exercise of minimal care. In effect, then, the commission may have assumed that the willfulness requirement was satisfied by gross negligence on Meyer's part.

■ Given our reading of the commission's decision, it becomes necessary to decide what meaning should be assigned to the word "willfully" as used in I.C. § 17–1366(j). Our objective is to ascertain the intent of the legislature in imposing the consequences prescribed by I.C. § 72–1366(j) only upon a claimant whose false statement or failure to report a material fact is willful.

We may assume that when it elects to use a particular term, the legislature is cogni-
zant of the meaning ascribed to that term in prior judicial decisions. *See C. Forsman Real Estate Co. v. Hatch*, 97 Idaho 511, 547 P.2d 1116 (1976). In 1955 the legislature declared for the first time that one who willfully failed to report a material fact was not entitled to unemployment benefits. Ch. 18, § 9, 1955 Idaho Sess. Laws 20, 36. Presumably, the legislature was aware of this Court's previous characterization of the willfulness concept in *Archbold v. Huntington*, 34 Idaho 558, 201 P. 1041 (1921):

> "[Willfully] implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, in the sense of having an evil or corrupt motive or intent. It does imply a conscious wrong, and may be distinguished from an act maliciously or corruptly done, in that it does not necessarily imply an evil mind, but is more nearly synonymous with 'intentionally,' 'designedly,' 'without lawful excuse,' and therefore not accidental." *Id.* at 565, 201 P. at 1043.

In 1966 this Court quoted with approval the foregoing excerpt from *Archbold* in *State v. Hall*, 90 Idaho 478, 490, 413 P.2d 685, 692 (1966). Since our decision in *Hall*, the legislature has repeatedly reenacted provisions penalizing claimants who willfully fail to report material facts in order to obtain benefits. *See, e. g.*, ch. 141, § 5, 1976 Idaho Sess. Laws 517, 525; ch. 47, § 1, 1975 Idaho Sess. Laws 86, 88. The legislature's presumed knowledge of our interpretations of willful in *Archbold* and *Hall* suggests that it intended to disqualify those claimants who purposely, intentionally, consciously, or knowingly fail to report a material fact, not those whose omission is accidental because of negligence, misunderstanding or other cause. *See also United States v. Steinhilber*, 484 F.2d 386 (8th Cir. 1973); *Brown v. State*, 334 So.2d 597 (Fla.1976); *Hebert v. State*, 323 A.2d 1 (Me.1974); *In re Bernstein*, 278 App.Div. 625, 101 N.Y.S.2d 925 (1951), *aff'd* 303 N.Y. 755, 103 N.E.2d 541 (1952); *In re Bailey*, 18 A.D.2d 727, 234 N.Y.S.2d 300 (1962); *In re Vick*, 12 A.D.2d 120, 208 N.Y.S.2d 788 (1960).

We stress that the mere assertion by Meyer that there was a communication gap of some kind does not preclude a finding that a claimant did in fact willfully make a false statement or representation or willfully fail to report a material fact in order to obtain benefits. The factfinder may consider the claimant's explanation unworthy of belief. Furthermore, a finding that a benefit claimant knew or thought it highly probable that he or she did not know what information a question solicited but nevertheless deliberately chose to respond without pursuing clarification would ordinarily support a conclusion of willful falsehood or concealment. *Cf. United States v. Thomas*, 484 F.2d 909 (6th Cir. 1973) (false statements in connection with acquisition of firearm were made knowingly if made with reckless disregard of whether statements were true or with conscious purpose to avoid learning the truth), *cert. denied*, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973). *See also United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) (en banc) (possession of marijuana was knowing where defendant was aware of facts indicating vehicle contained marijuana and deliberately avoided positive knowledge of contraband's presence to escape responsibility if apprehended), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

## IV

■ Finally, Meyer contends that the commission erred in finding that he began working full time for Western States Mobile Homes (Western) on September 1, 1976. The evidence before the commission was conflicting. On appeal from decisions of the Industrial Commission, the scope of this Court's review is limited to questions of law. *See* Idaho Const. Art. 5, § 9. The commission's findings of fact will not be disturbed on appeal when they are supported by substantial though conflicting evidence. *Booth v. City of Burley, supra; Hutchinson v. J. R. Simplot Co., supra.*

Thus, the question is whether the commission's finding that Meyer began full time work for Western on September 1 is supported by substantial evidence. We hold that it is. Meyer stated on August 19 that he was then working full time for Western. He later testified that he started working full time "around September." These statements are sufficient to support the finding that his full time work began on September 1, if not sooner.

## V

■ Meyer has asked that attorney fees be awarded under I.C. § 12–121. If Meyer should prevail below, he may obtain attorney fees reflecting expenses incurred in this appeal under the regulations of the DOE. Idaho Department of Employment Regulations art. 5, § 7(B)(3); *cf. White v. Idaho Forest Indus.*, 98 Idaho 784, 572 P.2d 887 (1977) (attorney fees recoverable under Department of Employment Regulations art. 5, § 7(B)(2)).

## CONCLUSION

The commission's determinations that Meyer refused suitable work and willfully failed to report his refusal of the Skyline offer are reversed. The finding that Meyer commenced full time work at Western on September 1, 1976, is affirmed. The case is remanded to the commission for reconsideration in accordance with this opinion. Costs to appellant.

McFADDEN and BISTLINE, JJ., concur.

SHEPARD, Chief Justice, dissenting.

I concur in the dissent of Donaldson, J., and further dissent from that portion of the majority opinion which overturns the Commission's determination that Meyer, without good cause, refused an offer of suitable work. I find that portion of the majority opinion confusing and unclear and I suspect the Commission will have the same reaction and find no clue as to the standards that they are thereafter to apply.

As much as I can ascertain from the majority, the Commission must hereafter, in a case where a claimant has refused employment, consider suitability not only in the statutory terms of risk to health, safety

and morals and whether his physical fitness, experience and training would enable him to perform the duties of his employment, but the Commission must also consider suitability of the work offered in terms of purely subjective reasons which are personal to the claimant. In the instant case it is clear that claimant was experienced in the line of work which he was offered, that such did not jeopardize his health, safety or morals, and that his refusal had nothing to do with the remaining statutory exceptions relating to the existence of a labor dispute or the joining or resigning from a labor organization or that the conditions of work were less favorable than those prevailing in similar work.

This Court has consistently held that good cause for terminating employment does not include purely personal and subjective reasons peculiar to the claimant. In *Clark v. Bogus Basin Recreational Ass'n*, 91 Idaho 916, 435 P.2d 256 (1967), the Court rejected the argument of claimant that he had good cause to terminate employment because he was subject to motion sickness when using employer provided transportation. In *McMunn v. Department of Public Lands*, 94 Idaho 493, 491 P.2d 1265 (1971), this Court rejected the argument of claimant that he did not desire to live away from home in a barracks atmosphere in a logging camp. In *Flynn v. Amfac Foods, Inc.*, 97 Idaho 768, 554 P.2d 946 (1976), the Court rejected claimant's argument that he had good cause in that he had to bring his family from Texas to Idaho. *See also Pyeatt v. Idaho State University*, 98 Idaho 424, 565 P.2d 1381 (1977).

The majority opinion rejects the rationale of the above cases on sole basis that those decisions related to claimants who had quit their jobs rather than claimants who were seeking employment. The majority opinion, nevertheless, continues to analyze what may constitute good cause as contained in the cases of *Burroughs v. Employment Security Agency*, 86 Idaho 412, 387 P.2d 473 (1963); *Boodry v. Eddy Bakeries Co.*, 88 Idaho 165, 397 P.2d 256 (1964); and *Flynn v. Amfac Foods, Inc., supra*. All of said cases are not refusal to accept employment,

but rather are cases of voluntary termination of employment without good cause. As to cases involving the question of good cause to refuse to accept work, *see In re Walker's Claim*, 80 Idaho 420, 332 P.2d 199 (1958) (claimant did not accept job because his wife required him to stay at home and help care for sick children). *Czarlinsky v. Employment Security Agency*, 87 Idaho 65, 390 P.2d 822 (1964) (plaintiff, who had previously worked nights, refused night work because she "had a home and . . . had a dog that had to have care for it.").

The majority appears to suggest that there exists a problem involving distance to work. I only point out that this case involving the work center at Boise, Idaho, with traveling connected therewith, is substantially different than those cases involving offers of employment at distant places which would require a claimant to commute substantial distance at his own expense.

In sum, I fear the opinion of the majority today offers no guidance to the Commission, but rather confuses what I had believed to be an otherwise reasonably clear portion of the law. It will, I believe, require the Commission to determine facts regarding each individual claimant's personal and private life and the personal idiosyncrasies of claimants and their families and necessarily decide if the various excuses advanced by claimants for not accepting employment are actual and sincere beliefs or merely make weight reasons for continuing on unemployment compensation.

DONALDSON, Justice, dissenting.

I respectfully dissent from that portion of the majority's opinion which defines the term "willfully" with respect to I.C. § 72–1366(j). I do not believe the word "willful," in and of itself, compels such an interpretation or that it was the legislature's intent to assign such an interpretation to it when they drafted I.C. § 72–1366(j).

The approach suggested by the New York Supreme Court, Appellate Division, in the cases of *In re Vick*, 12 A.D.2d 120, 208 N.Y.S.2d 788 (1960) and *Randazzo v. Cath-*

*erwood*, 29 A.D.2d 900, 287 N.Y.S.2d 936 (1968) should guide us in our disposition of the instant case and our interpretation of I.C. § 72–1366(j). *In re Vick* presented a factual situation almost identical to the one presented in the instant case. In *Vick*, the claimant indicated on a claim form that she had not worked on certain dates, when in fact she had. This error was the result of a claimant's misunderstanding based on her reading of an information book supplied to those applying for benefits. New York Labor Law § 594 provided in part: "A claimant who has wilfully made a false statement or representation to obtain any benefit . . . shall forfeit . . . ." The Referee who heard the testimony found that claimant had made an honest mistake and held that the above section did not apply in such a situation. The Supreme Court, however, reversed that interpretation and denied benefits based on Section 594, stating:

> What has happened here is that the Referee and the Board have determined that the excuse and extenuating circumstances offered by the claimant constituted an honest mistake to which the Section did not apply. The testimony, however, is undisputed that claimant *knowingly* and *intentionally* made the wrong mark in the boxes which per se was a violation of the Section. "Wilful" as used here does not imply a criminal intent to defraud but means "knowingly", "intentionally", "deliberately" to make a false statement.

208 N.Y.S.2d at 790.

The New York Court in a rehearing of the *Vick* case entitled *Randazzo v. Catherwood, supra*, 287 N.Y.S.2d at 937 stated:

> In *Matter of Vick [Catherwood]*, 12 A.D.2d 120, 208 N.Y.S.2d 788, this court held that when a claimant knowingly and intentionally made a wrong mark on an unemployment insurance form, it constituted a false statement as a matter of law.

Similarly the Ninth Circuit in the recent case of *Espinoza-Espinoza v. Immigration & Naturalization Service*, 554 F.2d 921 (9th Cir. 1977) held that the requirement of § 212(a)(19) of the Immigration & Naturalization Act, which mandates exclusion of any alien who seeks or procures a visa by willful misrepresentation of a material fact, is satisfied by finding that misrepresentation was deliberate and voluntary. *Cf. Chow Bing Kew v. United States*, 248 F.2d 466 (9th Cir. 1957) (willfully false representation of citizenship). The Ninth Circuit in *Espinoza-Espinoza* specifically rejected the contention that intent to deceive was necessary for a showing of willfulness.

I do not believe that it was the intent of the legislature in passing I.C. § 72–1366(j) to compel a claims examiner to probe the subjective intent of a claimant when a material fact is misrepresented or not reported on an application in order to determine eligibility. The problems presented by requiring proof of the claimant's subjective understanding of a question in order to deny benefits based on a false answer will present an unreasonable impediment to efficient administration of the Employment Security Law. I find little solace in the majority's assurance that "a finding that a benefit claimant knew or thought it highly probable that he or she did not know what information a question solicited but nevertheless deliberately chose to respond without pursuing clarification would ordinarily support a conclusion of willful falsehood or concealment." I question whether the majority will in the future be willing to uphold a finding of a claimant's comprehension of a question and thus willfulness in answering falsely based on a typical fact situation where claimant asserts misunderstanding but admits reading the instruction book explaining the claim form.

I believe the better approach is to define "willful" in terms of intentional or deliberate (i. e. voluntary action or omission in completing the form) without requiring proof of a scienter in the application of I.C. § 72–1366(j). Based on this interpretation there would be substantial evidence to uphold the Industrial Commission ruling denying benefits on the ground Meyer willfully withheld a material fact in order to obtain benefits and therefore I would affirm.