# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41592

CHARLES C. BELL,

  Claimant-Appellant,

v.

IDAHO DEPARTMENT OF LABOR,

  Respondent-Respondent on Appeal,

and

SEARS,

  Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2014 Term

2014 Opinion No. 138

Filed: December 18, 2014

Stephen W. Kenyon, Clerk

Appeal from the Idaho Industrial Commission.

The decision of the Industrial Commission is <u>affirmed</u>.

Charles C. Bell, pro se appellant.

Honorable Lawrence G. Wasden, Attorney General, Boise, for Respondent.

J. JONES, Justice

    Charles C. Bell appeals a decision of the Idaho Industrial Commission holding that he willfully made false statements or willfully failed to report material facts for the purpose of obtaining unemployment benefits. Because the Commission's decision is supported by substantial and competent evidence, we affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

    Charles C. Bell was employed by Sears from September 25, 2012, to May 16, 2013. During that period, Bell regularly filed for unemployment benefits with the Idaho Department of Labor ("DOL"). He received benefits for each week beginning with the week ending on Sept. 29, 2012, through the week ending on March 23, 2013. On March 26, 2013, the DOL discovered

1

discrepancies between the weekly gross wages reported by Bell in his unemployment filings and the gross wages reported to the DOL by Sears. The DOL requested additional information from Sears and Bell concerning his weekly gross wages and the hours he worked each week. The DOL relied upon the information provided by Bell to calculate his actual weekly gross wages because Sears provided only bi-weekly, rather than weekly, gross wage information. Based on the information provided by Bell, the DOL determined that Bell willfully misstated his gross wages for nineteen weeks in which he received benefits and that he was ineligible for benefits for nine weeks in which he claimed to have worked part-time hours despite working at least forty hours. Bell was disqualified from receiving benefits for fifty-two weeks, ordered to repay benefits he received for the relevant periods, and ordered to pay penalties for willfully misrepresenting his gross wages and the hours he worked in particular weeks.

Bell filed a protest of the DOL's initial determination and a hearing was held before a DOL appeals examiner. During that hearing Bell did not dispute that he worked at least forty hours during the weeks identified by the DOL or that he inaccurately represented his gross wages in the manner determined by the DOL. Instead, Bell argued that the misrepresentations were honest errors and that he should therefore not be subject to penalties. According to Bell, Sears represented to him that he was a part-time employee despite working full-time hours during certain weeks and Bell relied upon that representation when he stated that he worked part-time hours even during weeks in which he worked in excess of forty hours. Bell claimed he erred in reporting his weekly gross wages because Sears paid him bi-weekly with direct deposits into his bank account, which deposits did not provide information regarding his gross wages, much less his weekly gross wages. Bell stated that he estimated his gross wages for each week by multiplying his hourly rate by the number of hours he was scheduled to work that week, without later updating the DOL with more accurate wage information.

The DOL appeals examiner affirmed the DOL's initial determination. Bell then appealed to the Idaho Industrial Commission ("Commission"). As in the hearing before the appeals examiner, Bell did not dispute that he misrepresented his gross wages or that he worked at least forty hours in certain weeks in which he claimed to have worked part-time hours, but argued only that the misrepresentations were not willful.

The Commission issued a decision and order after conducting a *de novo* review of the record. It found that there was no dispute that Bell worked at least forty hours during certain

2

weeks in which he received benefits, though he claimed to have worked part-time hours during those weeks. It also found that Bell was aware of the requirement to update the DOL with accurate information regarding weekly gross wages if he initially estimated those wages when filing for benefits. Because Bell estimated his gross wages and knew of the requirement to update the DOL with accurate information, but made no attempt to do so, the Commission found that Bell willfully made false statements or failed to disclose material facts for the purpose of securing unemployment benefits.[1] The Commission concluded that Bell was not entitled to a waiver of the obligation to repay benefits that he received but to which he was not entitled, and that Bell was subject to penalties as a result of his misrepresentations.

Bell subsequently filed a request for a new hearing, repeating his argument that the misrepresentations were not willful. The Commission issued an order denying reconsideration and Bell timely filed a notice of appeal. The only issue on appeal is whether there is substantial and competent evidence in the record to support the Commission's finding that Bell willfully made false statements or willfully failed to report material facts for the purpose of obtaining unemployment benefits.

## II.
## ANALYSIS

### A. Standard of Review

"When this Court reviews a decision from the Industrial Commission, we exercise free review over questions of law, but review questions of fact only to determine whether the Commission's findings are supported by substantial and competent evidence." *Uhl v. Ballard Med. Products, Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* "[T]his Court does not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Hughen v. Highland Estates*, 137 Idaho 349, 351, 48 P.3d 1238, 1240 (2002). "The Industrial Commission's conclusions regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous." *Id.* "[T]his Court views all the facts and inferences in the light most favorable to the

---

[1] With respect to one of the weeks at issue, however, the Commission reversed the DOL appeals examiner. For the week ending October 13, 2012, the difference between the weekly gross wages Bell reported and the weekly gross wages he actually earned was $4.35. The Commission concluded that given "the nominal nature of the difference in reported wages," it "is not inclined to find that Claimant willfully made a false statement during this week."

3

party who prevailed before the Industrial Commission." *Neihart v. Universal Joint Auto Parts, Inc.*, 141 Idaho 801, 802–03, 118 P.3d 133, 134–35 (2005).

**B. The Commission's conclusion that Bell willfully made false statements or willfully failed to report material facts in order to secure unemployment benefits is supported by substantial and competent evidence.**

Idaho Code section 72-1366(12) provides that "[a] claimant shall not be entitled to benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits." Such a claimant must "repay any sums received for any week for which the claimant received waiting week credit or benefits as a result of having willfully made a false statement or willfully failed to report a material fact," *id.*, and is liable for penalties "for each determination in which the claimant is found to have made a false statement, misrepresentation, or failed to report a material fact to the department . . . ." I.C. § 72-1369(2).

Bell does not argue that his weekly gross wages or the number of hours he worked in particular weeks were immaterial. A fact is material if it "is relevant to the determination of a claimant's right to benefits . . . ." *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 760, 589 P.2d 89, 95 (1979). Idaho Code section 72-1312(1) conditions the availability of benefits for a particular week on the claimant working less than full-time during that week. Idaho Code sections 72-1312(4) and 72-1367(4) tie the benefits to which a claimant is entitled during a particular week, if any, to the gross wages the claimant earned during that week. As a result, Bell's wages and the hours he worked during the weeks for which he claimed benefits are material facts. *See McNulty v. Sinclair Oil Corp.*, 152 Idaho 582, 586, 272 P.3d 554, 558 (2012) (holding that the amount the claimant earned working part-time was "material because his earnings were relevant to the determination of . . . [the claimant's] right to benefits and could have affected the amount of benefits . . . [the claimant] was entitled to receive").

Nor does Bell dispute the Commission's conclusion that his unemployment filings included misrepresentations regarding his weekly gross wages and whether he worked part or full-time hours during certain weeks. As to both, Bell acknowledges that his unemployment filings contained misrepresentations but claims that "[a]ny/all acknowledged reporting errors were and remain strictly inadvertent and accidental" and that he was not "willfully trying to get compensation that was not rightfully [his] . . . ." The only issue on appeal, then, is whether Bell acted willfully when he made false statements or failed to disclose material facts regarding his

4

weekly gross wages and the hours he worked during particular weeks.

> [Willfully] implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, in the sense of having an evil or corrupt motive or intent. It does imply a conscious wrong, and may be distinguished from an act maliciously or corruptly done, in that it does not necessarily imply an evil mind, but is more nearly synonymous with "intentionally," "designedly," "without lawful excuse," and therefore not accidental.

*Meyer*, 99 Idaho at 761, 589 P.2d at 96 (quoting *Archbold v. Huntington*, 34 Idaho 558, 565, 201 P. 1041, 1043 (1921)). Enactment of "provisions penalizing claimants who willfully fail to report material facts in order to obtain benefits. . . . suggests that [the Legislature] intended to disqualify those claimants who purposely, intentionally, consciously, or knowingly fail to report a material fact, not those whose omission is accidental because of negligence, misunderstanding or other cause." *Id. See also Smith v. State, Dept. of Employment*, 107 Idaho 625, 628, 691 P.2d 1240, 1243 (1984).

The Commission's findings regarding Bell's misrepresentation of his weekly gross wages are supported by substantial and competent evidence in the record. Between 2005 and 2012, Bell made initial filings for unemployment benefits on nine separate occasions. According to the DOL, Bell would have received a copy of its pamphlet, "Unemployment Insurance Claimant Benefit Rights, Responsibilities and Filing Instructions," on each occasion. That pamphlet makes clear that benefit amounts are determined by weekly gross wages and that "[i]f wages have been reported incorrectly, you MUST contact your local office immediately." The pamphlet states that "[i]f you cannot determine the exact amount you earned, you must estimate weekly earnings as close as possible. If you do estimate earnings, you must contact your local office when you receive the correct earnings information." The pamphlet says that "[m]aking false statements or failing to report material facts, including weekly earnings" constitutes fraud. Bell argues that he did not receive the DOL's pamphlet each time he initiated a new unemployment claim, but acknowledges that he "most likely" received it in the past. Bell filed electronically for unemployment benefits during the period at issue here. That process required Bell to certify that he had read the DOL's pamphlet and that the information he provided, including information regarding his weekly gross wages, was accurate. Finally, Bell knew how to contact the DOL with updated information. Bell previously called the DOL to correct information in his weekly unemployment filings on several occasions. On each such occasion, the correction secured Bell

5

additional benefits.

Bell knew that he was required to correct inaccurate information with the DOL and how to do so. He blames the information provided by Sears for his failure to satisfy this obligation. Bell claims that he received only bi-weekly payments directly deposited by Sears into his checking account and those direct deposits provided only his bi-weekly net wages, not his weekly gross wages. So, he claims "he had no way of reasonably, rationally, or logically knowing he received benefits to which he was not entitled." Bell knew, however, that he merely estimated his weekly gross wages each week and that, as mere estimates, the amounts he provided the DOL were likely inaccurate. Bell claims that he estimated his weekly gross wages in his unemployment filings by determining the number of hours he was scheduled in a given week and multiplying that number by his hourly wage. Such a method is bound to result in inaccuracy where, as is surely common, an employee occasionally clocks in early, stays late, or picks up additional hours here and there. Bell does not explain why he did not personally keep track of the hours he actually worked during the course of a week. While doing so might still have resulted in some inaccuracy, it would have been significantly more accurate than the means by which Bell chose to estimate his weekly gross wages. Assuming that the figures provided by the DOL are accurate, Bell's estimates were often more than just slightly off. For the weeks ending November 10th and November 17th, for instance, Bell's actual weekly gross wages were nearly twice what he reported in his unemployment filings for those weeks. Bell presumably should have realized at that point, if he somehow failed to realize earlier, that his estimates were substantially inaccurate.

Bell does not explain his failure to investigate his actual weekly gross wages prior to the DOL's request for additional information. Bell accessed additional payroll information through Sears' "My Personal Information" website and recovered his bi-weekly gross wages in response to the DOL's request, but apparently made no attempt to seek out this information prior to the DOL's request. As Bell notes, even this information did not include his weekly gross wages. But, had Bell accessed the information earlier, he could have compared the bi-weekly gross wages reported by Sears with the gross wages he reported to the DOL over the corresponding two-week periods and noted the discrepancies with the DOL. Bell likewise does not explain why he did not contact Sears directly to request weekly gross wage information or contact the DOL for advice concerning how to proceed in the absence of that information.

On the hours-worked issue, Bell argues that when he reported he worked part-time hours during weeks in which he worked in excess of forty hours, he relied upon Sears' representation that he was a part-time employee because, though he might occasionally work forty hours in a week, he was not guaranteed forty hours each week. When Bell filled out an unemployment claim each week, he answered the question: "Did you work full time hours for the entire week?" Even if Sears categorized Bell as a part-time employee, that fact has no obvious relevance to the question whether Bell worked "full-time hours" in particular weeks. As Bell was allegedly understanding "part-time employee," part-time employees might work full-time hours in particular weeks. The DOL asked Bell whether he worked full-time hours in particular weeks, not how Sears categorized him as an employee. Bell acknowledges that he never sought clarification from the DOL concerning what it meant by "full-time hours." "[A] finding that a benefit claimant knew or thought it highly probable that he or she did not know what information a question solicited but nevertheless deliberately chose to respond without pursuing clarification would ordinarily support a conclusion of willful falsehood or concealment." *Meyer*, 99 Idaho at 762, 589 P.2d at 97. At the very least, Bell should have been uncertain whether he could work in excess of forty hours in a week without working "full-time hours" in that week.

There is substantial and competent evidence in the record to support the Commission's findings that Bell willfully made false statements regarding the hours-worked issue and that he failed to report material facts regarding his actual weekly gross wages for the purpose of securing unemployment benefits. Bell argues that he did not intend to defraud the DOL. Though that may be so, willful conduct "does not require any intent to violate law . . . ." *Id.* at 761, 589 P.2d at 96. The evidence in the record supports the conclusion that Bell knew of his obligation to correctly report his actual hours worked, on the one hand. And, on the other, he knew he was required to update the DOL if he initially reported inaccurate information, he knew the information he initially reported was inaccurate, and he made no attempt to provide the DOL with accurate information or notify the DOL that the information he provided was inaccurate.

**C.  The Court will not consider issues raised for the first time in Bell's reply brief.**

While Bell's opening brief focuses exclusively on the claim that he did not willfully make false statements or fail to disclose material facts, Bell's reply brief states eight "issues on appeal." Six of those asserted issues relate to the propriety of the Commission's decision while two of the issues were not raised below. First, this Court "will not consider issues that are raised

7

for the first time on appeal." *Sadid v. Idaho State Univ.*, 151 Idaho 932, 941, 265 P.3d 1144, 1153 (2011). Second, we "will not consider arguments raised for the first time in the appellant's reply brief." *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). Though he is a pro se appellant, Bell is "held to the same standards and rules as . . . [an appellant] represented by an attorney." *Twin Falls Cnty. v. Coates*, 139 Idaho 442, 445, 80 P.3d 1043, 1046 (2003). Because Bell did not raise these issues below or in his opening brief, they are not properly before the Court.

### III.
### CONCLUSION

We affirm the Commission's decision and award costs to the Department of Labor.


Chief Justice BURDICK, and Justices EISMANN, HORTON, and Justice Pro Tem WALTERS CONCUR.