701 P.2d 230

**Palmer PETERS, Claimant-Respondent,**

v.

**DRAKE MECHANICAL,
Employer-Respondent,**

**and**

**State of Idaho, Department of
Employment, Appellant.**

**No. 15537.**

Supreme Court of Idaho.

May 24, 1985.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Roger T. Martindale, Deputy Atty. Gen., (argued), Boise, for appellant.

W. Craig James, Boise, for claimant-respondent Peters.

BISTLINE, Justice.

## HISTORY

Palmer Peters is a plumber, and has been a member of a union for approximately twenty years. He had been employed by Drake Mechanical for three and one-half years at the time involved in which Mr. Peters' claim occurred. Those events are simply stated.

The relationship between Drake and its employees was governed by a Master Labor Management Collective Bargaining Agreement entered into by the Associated Plumbing and Heating Contractors of Idaho, a multi-employer bargaining unit of which Drake was a member, and the Idaho State Pipe Trades, Mr. Peters' union. This contract was to expire on May 31, 1983. In February 1983, Drake opted out of the multi-employer bargaining unit in connection with the negotiating of a new Master Agreement, and informed the Pipe Trades Union that it would be willing to independently negotiate with the union for a new labor contract. Nothing ever resulted from these negotiations.

In the meantime, the Pipe Trades Union and the multi-employer bargaining unit entered into a new Master Agreement. Drake refused to honor this new Master Agreement, however, because Drake had withdrawn from the multi-employer bargaining unit.

Peters did not report to work on June 1, 1983—the first effective day of the new Master Agreement—out of fear that if he continued to work for Drake, a nonsignatory of the new agreement, he would thereby lose union pension benefits and be subject to union penalties. He also was concerned with the reduction in wages, insurance, and retirement benefits in relation to what he had previously been earning, which Drake, independently and entirely on its own, was now offering its employees. Believing that Drake would never sign the new Master Agreement, on June 3, 1983, Mr. Peters quit and requested a termination notice from his employer, who readily supplied one.

Thereupon, Peters filed a claim for unemployment benefits which the Department of Employment denied on the basis that Peters had quit without good cause. This decision was affirmed following a requested redetermination. Following a timely appeal, an appeals examiner ruled in Peters' favor. The appeals examiner stated that there were two controlling issues: whether Peters should be denied benefits because either (1) his unemployment was due to a continuing labor dispute; or (2) he had failed without good cause to accept suitable work when it was offered to him by Drake on June 1, 1983—the date of Drake's offer of employment at reduced wages and benefits to Mr. Peters on the day the old Master Agreement expired.

With respect to the first issue, the appeals examiner decided that "the record is clear in establishing in this instance that the ... claimant's unemployment as of [June 3, 1983] was not due to a labor dispute." With respect to the second issue, the appeals examiner stated:

Therefore, whether it is construed that the claimant quit his job or was discharged or refused work, the claimant is eligible for benefits because the quitting of work that is not suitable is always with good cause. The refusing of work that is not suitable is with good cause, and the refusing of unsuitable work does not constitute misconduct.

On March 27, 1984, the Industrial Commission affirmed the appeals examiner. The Commission also concluded that Idaho Department of Employment Rule 09.30.308 precludes the Department from requiring a claimant in Mr. Peters' shoes of satisfying the "good cause" requirement of I.C. § 72–1366(e) in determining eligibility for benefits.

The Department of Employment appeals the Commission's decision, arguing that I.C. § 72–1366(g)(1) and Rule 09.30.308 do not preclude the Commission from deciding whether Mr. Peters quit with good cause pursuant to I.C. § 72–1366(e). This argument does not address the issues of this case.

I.C. § 72–1366(a–s) set forth various eligibility standards a claimant must satisfy to qualify for unemployment benefits. Of pertinence to this appeal are subsections (e) through (g) and (j). Subsection (e) states that a claimant is not entitled to benefits if he either voluntarily quit his job without good cause, or was discharged for misconduct. Subsection (f) states that a claimant must apply for and accept any available,

suitable work. Subsection (g) defines what is considered suitable work. It states:

(g) In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and other pertinent factors shall be considered. *No employment shall, in any event, be deemed suitable and benefits shall not be denied to any otherwise eligible individual for refusing to accept new work or to hold himself available for work under any of the following conditions:*

(1) *If the vacancy of the position offered is due directly to a strike, lockout, or other labor dispute; ....*

(Emphasis added.)

Subsection (j) prohibits, with a few exceptions, the award of benefits where the claimant's unemployment is due to a labor dispute.

## I.

■ The determination of whether Mr. Peters' unemployment was due to a labor dispute was a factual matter for the Commission to determine. Thus, our standard of review is that of whether substantial, competent evidence exists in the record to support the finding. ID. CONST. art. 5, § 9; *In re Chavez,* 104 Idaho 279, 281, 658 P.2d 950, 952 (1983). We hold that substantial evidence sustains the Commission on this point.

In determining whether Mr. Peters' unemployment was due to a labor dispute, the appeals examiner considered a wide range of factors, including the continuation of an employee walkout, the existence of negotiations or the possibility thereof, the continuation of the controversy, the securing of permanent replacements by Drake, and the voluntary termination of employment by Mr. Peters.

■ The appeals examiner found that Mr. Peters' unemployment was due to a labor dispute from June 1 to June 3. On June 3, however, when Mr. Peters requested a termination slip and Drake replaced him with another worker, the appeals examiner found that Mr. Peters' unemployment *from that date on* was not due to a labor dispute. The appeals examiner then relied upon DOE Rule 09.30.308, which states that where a claimant has severed the employer-employee relationship during the course of a labor dispute, he or she shall not be denied benefits upon the basis of that dispute. Accordingly, the appeals examiner held, and we agree, that Mr. Peters cannot be denied benefits after June 3, 1983, on the basis of any labor dispute pursuant to I.C. § 72–1366(j).

## II.

The remaining issue to decide is whether any other section of I.C. § 72–1366 precludes the award of benefits to Mr. Peters. Our conclusion is that there is not. The Department argues that the appeals examiner and the Commission granted Mr. Peters his benefits without considering § 72–1366(e). We disagree.

■ The appeals examiner held that the quitting of work which is not suitable work is always good cause. This conclusion is obviously in reference to § 72–1366(e), which requires an employee who quits and seeks unemployment benefits to have quit with good cause. The Department does not dispute this holding, and we agree with it. *Clay v. Crooks Industries,* 96 Idaho 378, 379, 529 P.2d 774, 775 (1974). The question to be answered, then, is whether Mr. Peters quit "suitable work."

■ As mentioned above, I.C. § 72–1366(g) defines suitable work. That section expressly states that if the vacancy of a position offered is directly due to a labor dispute, such a position is *not* to be considered suitable work. In this case, Mr. Peters refused to accept the new conditions of employment offered him by Drake. In essence, Mr. Peters' job with Drake at the old pay and benefits levels was terminated

**614**

and replaced by a new job with reduced pay and benefits. The new job was the result of Drake's refusal to offer its employees wages and benefits equal to what either the expired or the new Master Agreements called for. Thus, the new job was a vacancy created by a labor dispute, and Mr. Peters' decision not to accept such work—statutorily defined by I.C. § 72–1366(g)(1) as unsuitable work—was with good cause. Therefore, we reject the Department's arguments and affirm the Commission's award of benefits to Mr. Peters, there being nothing in Idaho's Worker's Compensation Act that precludes his entitlement to benefits.

Pursuant to DOE Rule 09.06.082, Mr. Peters is entitled to attorney's fees. Costs to respondent.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, J., concurs in the result.

BAKES, Justice, concurring in the result, in part.

I concur in the result obtained by the plurality opinion, *i.e.*, that the commission's award of unemployment benefits should be affirmed. However, I disagree with the award of attorney fees, particularly the basis on which the plurality opinion purports to award them, for the reason set out by Justice Shepard in his opinion concurring in the result.

SHEPARD, Justice, with whom HUNTLEY, Justice concurs, concurring in the result.

I concur in the result obtained by the majority, *i.e.*, that the commission's award of unemployment benefits should be affirmed and that attorney's fees on appeal should be awarded. I disagree, however, that a Department of Employment rule can in any manner or fashion control the actions or decisions of this Court. It is further my understanding that the Department of Employment rule purporting to award attorney's fees has been repealed and reenacted with modifications.