104 P.3d 954

Gary EDWARDS, Claimant–Appellant,

v.

INDEPENDENCE SERVICES, INC.,
Employer–Respondent,

and

State of Idaho, Department
of Labor, Respondent.

No. 29954.

Supreme Court of Idaho,
Lewiston, October 2004 Term.

Dec. 15, 2004.

Gary A. Edwards, Coeur d'Alene, pro se appellant.

Richard K. Kuck, Coeur d'Alene, for employer-respondent.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent State of Idaho.

TROUT, Justice.

Claimant-appellant Gary Edwards appeals from the Industrial Commission's decision denying him unemployment insurance benefits. The Commission found that Edwards was not discharged from employment and had voluntarily quit his job without exploring viable employment options that were available to him through the corporation. The decision of the Industrial Commission is supported by substantial and competent evidence and is, therefore, affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Edwards began employment in November 2000, when he and a partner formed a corporation named Independence Services, Inc.

(the Corporation). Edwards managed the Case Management Division of the Corporation, which provided case management services to mentally ill adults under a contract with Idaho's Medicaid program. His partner, Ethelle Bartosovsky, managed the Psycho-social Rehabilitation (PSR) Division, with each division of the Corporation operating as a separate entity with its own expenses, payroll, and billing. In September 2002, the State of Idaho announced Medicaid cuts, wherein the number of hours of case management eligible for Medicaid reimbursement was significantly reduced.[1] The cuts were scheduled to take effect on December 1, 2002, but did not actually take effect until December 16, 2002. Edwards concluded that the cuts would adversely affect his profits.

In a meeting with Bartosovsky on September 30, 2002, Edwards proposed merging both of the corporate divisions to offset his expected profit losses. Bartosovsky rejected that proposal. However, the record indicates that Bartosovsky offered Edwards other positions within the Corporation as well as opportunities for Edwards to recoup the expected loss in income the Medicaid reimbursement changes would bring to his division. Edwards rejected these proposals and on November 4, 2002, told Bartosovsky that he was suspending operations of the Corporation's Case Management Division by November 30, 2002. Edwards' last day of work at the Corporation was November 21, 2002. At that time, he suspended operations of the Corporation's Case Management Division without board approval, and without dissolving the Corporation. However, it appears he remained one of the corporate officers.

Edwards also began operations of a newly formed business as a sole proprietor on December 1, 2002, hoping to provide both case management and psycho-social rehabilitation services. He told Bartosovsky that his staff and clients from the Corporation would be moving to his new company. Operation of the new company began on December 4, 2002, but Edwards did not take his first

1. The Industrial Commission stated the Medicaid cuts were announced in October 2002. That finding appears to be in error based upon other dates of actions found by the Commission, but that error is immaterial to the ultimate determination.

**914**

compensation from the business until April 2003.

On December 5, 2002, Edwards applied for unemployment insurance benefits, indicating that his employment ended on November 21, 2002, because the business closed. Edwards initially received unemployment benefits until the beginning of February, when the Department of Labor determined that he was not eligible for the benefits he had received because he had quit voluntarily. Edwards opposed the determination and a hearing was held in front of an Appeals Examiner. The Examiner also denied benefits, finding Edwards did not have good cause for voluntarily separating himself from his employment because he had viable options available to him and he failed to explore those options. It was also determined that Edwards was not eligible for a waiver of repayment of the unemployment benefits received to which he was not entitled.

The decision was appealed to the Industrial Commission, which conducted a de novo review of the record and affirmed the Examiner's decision on the same basis, also finding that the evidence did not indicate that Edwards faced an imminent substantial wage reduction at the time he left his employment. Edwards timely filed this appeal, arguing the Commission's conclusions were in error because Bartosovsky's offers of employment were not viable and he had good cause for terminating his employment.

## II.

### STANDARD OF REVIEW

■ When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether the Commission's findings are supported by substantial and competent evidence. *Hughen v. Highland Estates,* 137 Idaho 349, 351, 48 P.3d 1238, 1240 (2002). Whether or not good cause existed to quit employment is a question of fact. *Teevan v. Office of the Attorney General,* 130 Idaho 79, 936 P.2d 1321 (1997). Therefore, factual findings of the Industrial Commission that there was not good cause to quit employ-

ment, if supported by substantial and competent evidence, will not be disturbed by this Court. *Ewins v. Allied Security,* 138 Idaho 343, 346, 63 P.3d 469, 472 (2003). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Uhl v. Ballard Medical Products, Inc.,* 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). The Court will not reweigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Hughen,* 137 Idaho at 351, 48 P.3d at 1240. As such, the function of the Court on appeal is not to review independently the Commission's decision, but to simply review the factual findings and determine whether or not there is substantial and competent evidence to support the facts found. *Id.*

## III.

### ANALYSIS

■ The only issue before the Court is whether the Commission erred in denying unemployment benefits to Edwards. When an employment separation occurs, a claimant is eligible for unemployment insurance benefits if "unemployment is not due to the fact that he left his employment voluntarily without good cause connected with his employment, or that he was discharged for misconduct in connection with employment." Idaho Code § 72–1366(5). At the hearing in front of the Appeals Examiner, Edwards maintained that his separation from employment stemmed from the closure of the business brought on by changes in Medicaid reimbursement that would have left him with too little work to maintain profitability.

■ The record clearly indicates Edwards chose to suspend operations of his division of the Corporation, not due to the fact that there was no continuing work for him, but because he felt it unprofitable to continue in business in the way he had previously conducted it. Because this action is best defined as a voluntary separation under § 72–1366, Edwards had the burden of proving that such separation was for good cause by a preponderance of the evidence. *Teevan v. Office of the Attorney General,* 130 Idaho 79,

82, 936 P.2d 1321, 1324 (1997). A "preponderance of the evidence" is evidence that, when weighed with that opposed to it, has more convincing force and from which a greater probability of truth results. *Cook v. Western Field Seeds, Inc.,* 91 Idaho 675, 681, 429 P.2d 407, 413 (1967).

■ The meaning of "good cause" within § 72–1366 is a factual determination to be made by the Commission on a case-by-case basis. A claimant must prove that his reasons for leaving employment arose from his working conditions, job tasks, or employment agreement. IDAPA 09.01.30.450.02. In *Ewins v. Allied Security,* 138 Idaho 343, 63 P.3d 469 (2003), this Court defined "good cause" as follows:

> In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive.

*Ewins,* 138 Idaho at 347–48, 63 P.3d at 473–74 (quoting *Burroughs v. Employment Security Agency,* 86 Idaho 412, 414, 387 P.2d 473, 474 (1963)).

■ Edwards essentially maintained that changes in Medicaid reimbursement rendered his working conditions unsuitable, substantially reducing his wages to the point that he could not continue the business and maintain any profit. This Court has held that quitting work that is not suitable is always good cause for leaving employment. *Clay v. BMC West Truss Plant,* 127 Idaho 501, 504, 903 P.2d 90, 93 (1995). Further, an employee leaves his employment with good cause "when the conditions [are] unsuitable when compared to the conditions of the job as originally offered." *Clay v. Crooks Industries,* 96 Idaho 378, 379, 529 P.2d 774, 775 (1974). A wage reduction can constitute a substantial adverse change in conditions giving a claimant good cause to leave employment. *Kyle v. Beco Corp.,* 109 Idaho 267, 269, 707 P.2d 378, 380 (1985).

■ However, in addition to establishing that he left employment for good cause, Edwards must also have demonstrated that he examined reasonable alternatives prior to quitting. When an employee has viable options available, voluntary separation without exploring those options does not constitute good cause for obtaining unemployment benefits. *Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 823, 654 P.2d 914, 916 (1982). This requirement stems from the policy of encouraging an employer and employee to work out their differences without interrupting the employment relationship. *Hart v. Deary High School,* 126 Idaho 550, 553, 887 P.2d 1057, 1060 (1994).

The Commission found that Edwards did not face an imminent substantial wage reduction at the time he left his employment. This finding is supported by substantial and competent evidence in the record. Bartosovsky testified at the hearing that both divisions of the Corporation were separate, with each director having their own staff, billing and operating procedures. The record indicates that Edwards made all of the hiring, firing and work assignment decisions in his division. Bartosovsky further testified that even after the Medicaid changes were made, Edwards could have continued to work because he could have simply taken clients from his own staff and worked them himself, but refused to do so.

Bartosovsky also testified, and Edwards did not refute, that the staff takes about half of all income received from billing. Because Edwards was the director of his division, he could have reduced staff, reduced other overhead and otherwise made decisions to continue receiving a viable income from the Corporation. Instead, Edwards simply determined it would be more profitable to take his staff and clientele from Independence Services and form his own company, where he could perform both PSR and case management services.

There is also substantial and competent evidence contained in the record to support the Commission's conclusion that Edwards did not have good cause for terminating his employment because he failed to explore oth-

**916**

er viable options open to him. Bartosovsky testified during the hearing that she offered Edwards administrative and other positions at Independence Services. She also testified that she offered to let Edwards do PSR assessments for new clients in order to supplement his income from the services he was already providing. Finally, the record indicates that Bartosovsky offered Edwards the position of administering a developmental disability agency that Bartosovsky planned to add to the company. Edwards failed to explore any of these options in good faith and simply rejected them outright. It appears more likely from the timing of his termination and the commencement of his new business, that Edwards' motivation in rejecting these offers was his desire to start his own business, which he believed would be more profitable in the long run.

### IV.

### CONCLUSION

There is substantial and competent evidence in the record to support the Commission's finding that Edwards did not face an imminent and substantial wage reduction at the time he left Independence Services. There is also substantial and competent evidence supporting the Commission's finding that Edwards failed to pursue any of the available options offered through Independence Services before quitting. We, therefore, affirm the decision of the Commission denying unemployment insurance benefits.

Chief Justice SCHROEDER and Justices KIDWELL, EISMANN and BURDICK concur.

