**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46081**

| | | |
|---|---|---|
| BRENT AUSTIN, | ) | |
| | ) | |
| Claimant-Respondent, | ) | Boise, May 2019 Term |
| | ) | |
| v. | ) | Opinion Filed: June 17, 2019 |
| | ) | |
| BIO TECH NUTRIENTS, Employer, and | ) | Karel A. Lehrman, Clerk |
| EMPLOYERS COMPENSATION | ) | |
| INSURANCE COMPANY, Surety, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Commission is _affirmed_. Costs on appeal
are _awarded_ to Austin.

Gardner Law Office, Boise, attorneys for Appellants. Michael
McPeek argued.

Ruchti & Beck Law Offices, Pocatello, attorneys for Respondent.
Joel A. Beck argued.

———————————————————————

BEVAN, Justice

## I. NATURE OF THE CASE

This is a worker's compensation case. The dispute is whether Brent Austin filed a timely complaint for additional benefits with the Idaho Industrial Commission when it was filed more than a year after his employer, Bio Tech Nutrients, and its surety, Employers Compensation Insurance Company, (collectively "Defendants") stopped paying worker's compensation benefits. The Commission held that the one-year statute of limitations to file a complaint was tolled because the Defendants did not send a Notice of Claim Status ("NOCS") when they submitted Austin's final payment; as such, the Commission concluded Austin's complaint was timely filed. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

1

On November 20, 2008, Austin was injured in the course of his employment with Bio Tech Nutrients. Austin received medical treatment from November 21, 2008, through June 20, 2014. From June 9, 2012, through July 18, 2014, Austin received temporary total disability ("TTD") benefits. On June 20, 2014, Dr. Fellars performed an independent medical evaluation and determined Austin had reached maximum medical improvement.

On July 18, 2014, Defendants sent a NOCS to Austin that informed him his TTD benefits would stop immediately because of Dr. Fellars' determination Austin had reached maximum medical improvement. Even so, the NOCS explained that Dr. Fellars rated Austin's permanent partial impairment ("PPI") at 11% of the whole person, which correlated to $18,694.50. The Defendants were to make bi-weekly payments beginning August 1, 2014, until the award was paid in full. The NOCS also included the disclaimer that "[t]his impairment rating does not *settle* your claim. However, MMI [Maximum Medical Improvement] means no further treatment is recommended which is likely to improve your industrial condition." (Emphasis in original). A copy of Dr. Fellars' medical report was attached to the July 18, 2014, NOCS.

Despite what was said in the NOCS, Austin's PPI benefits began on July 19, 2014, and continued until June 22, 2015, when the Surety issued Austin a check for $2,379.30. The remittance advice attached to this check indicated a payment description of "Permanent Partial Scheduled/Impairment" and included a comment of "PPI Final Payment." The June 22, 2015, check cleared the Surety's bank on July 10, 2015. The Defendants did not send Austin, nor file with the Commission, any NOCS or other written form of notice about Austin's "final payment" of PPI benefits.

On July 20, 2016, Austin filed a worker's compensation complaint seeking medical benefits for chronic pain treatment, another surgery, and TTD benefits. In the complaint Austin also reserved the right to bring claims for additional PPI and permanent partial disability ("PPD") benefits after reaching maximum medical improvement. On July 26, 2016, Defendants filed an answer and asserted that Austin's complaint was barred by the statute of limitations of Idaho Code section 72-706(3).

The proceedings were bifurcated and the parties submitted the sole issue of whether Austin's complaint was timely filed with the Commission. The crux of the issue was whether the Defendants had to provide a new NOCS with Austin's final payment. The Commission referred the matter to a Referee. Austin argued that the statute of limitations was tolled pursuant to Idaho

2

Code section 72-604 because Defendants failed to file a NOCS as required by section 72-806. The Referee recommended that Austin's complaint was not timely. The Referee determined the Defendants did not have to send Austin a NOCS with his final payment for PPI benefits because his level of benefits did not change; the benefits simply went from being prospective to being realized. The Referee concluded that since no notice was required, the tolling provisions of Idaho Code section 72-604 did not apply, and Austin's complaint was untimely because it was filed more than a year after he received his last payment of income benefits.

The Commission declined to adopt the Referee's recommendation and entered its own findings of fact, conclusions of law, and order in which it concluded that Austin's complaint was timely filed. The Commission held that Idaho Code section 72-806 required the Defendants to submit a NOCS with the last check for Austin's PPI payments, and that its failure to do so tolled the one-year statute of limitations based on the provisions of section 72-604. The Defendants filed a motion for reconsideration, which the Commission denied. The Defendants filed a permissive appeal to this Court.

### III. ISSUES ON APPEAL

1. Whether the Commission erred when it held the Defendants were required to provide a NOCS when Austin's final PPI payment was issued.

2. Whether the Commission erred in determining that the Defendants' failure to issue a NOCS when Austin's payments were terminated constituted a "willful act" under Idaho Code section 72-604.

3. Whether the Defendants substantially complied with Idaho Code section 72-806 and if so, whether that substantial compliance excuses any technical violation of the statute.

4. Alternatively, whether Austin's complaint was timely because it was filed within one year of the date that the July 18, 2014, NOCS conveyed the last payment of income benefits would occur.

### IV. STANDARD OF REVIEW

The facts on appeal are not disputed. "When reviewing a decision of the Industrial Commission, this Court exercises free review over questions of law." *Atkinson v. 2M Co., Inc.*, 164 Idaho 577, ___, 434 P.3d 181, 184 (2019) (quoting *Sundquist v. Precision Steel & Gypsum, Inc.*, 141 Idaho 450, 453, 111 P.3d 135, 138 (2005)).

### V. ANALYSIS

This case hinges on the interpretation and application of three statutes: Idaho Code sections 72-706, 72-604, and 72-806. Idaho Code section 72-706(3) provides: "the claimant shall

have one (1) year from the last payment of income benefits within which to make and file with the commission an application requesting a hearing for additional income benefits." I.C. § 72-706(3). Section 72-604 tolls the time for a claimant to seek compensation "[w]hen the employer has knowledge of an occupational disease, injury, or death and willfully fails or refuses to file the report as required by . . . section 72-806, Idaho Code." I.C. § 72-604. Section 72-806 pertains to the NOCS requirements and provides:

> A workman shall receive written notice within fifteen (15) days of any change of status or condition including, but not limited to, the denial, reduction or cessation of medical and/or monetary compensation benefits, which directly or indirectly affects the level of compensation benefits to which he might presently or ultimately be entitled. If any change in compensation benefits is based upon a medical report or medical reports from any physician or any other practitioner of the healing arts, a copy of such report shall be attached to the written notice which the workman shall receive. The industrial commission shall by rule and regulation, determine by whom the notice shall be given and the form for such notice. In the absence of a rule governing a particular situation, the employer's insurer, or in the case of self-insurers, the employer, shall be responsible for giving the notice required herein.

I.C. § 72-806. This notice must be provided in a format substantially similar to IC Form 8. IDAPA 17.02.08.061.

A.    **The Commission properly held that the Defendants were required to provide a NOCS when the final PPI payment was sent to Austin.**

As noted, a claimant must generally file a claim for additional income benefits within one year from the last payment of income benefits. I.C. § 72-706(3). Austin did not file a complaint until July 20, 2016, more than a year after he received the last payment of PPI benefits on June 22, 2015. Even so, the Commission held that Austin's complaint was timely because Idaho Code section 72-806 required the Defendants to send a NOCS with the final payment, and that the failure to do so tolled the statute of limitation in section 72-706(3). *See* I.C. § 72-604 ("[w]hen the employer has knowledge of an occupational disease, injury, or death and willfully fails or refuses to file the report as required by . . . section 72-806, Idaho Code, the limitations prescribed in . . . section 72-706, Idaho Code, shall not run against the claim of any person seeking compensation until such report or notice shall have been filed.").

The Defendants acknowledge that the notice required by section 72-806 was never filed with the Commission. Still, the Defendants urge that notice under section 72-806 was not required because Austin's level of compensation did not change when he received his final PPI

payment. Instead, Austin's level of compensation was for a fixed amount as identified in the July 18, 2014, NOCS. The final payment merely accelerated the payment stream originally identified in the July 18 NOCS. Defendants claim the July 18 NOCS notified Austin of both the initiation *and* cessation of the finite award. The Defendants allege the Commission erred when it failed to distinguish between a type of benefit that is fixed, such as PPI or PPD, and one not fixed, such as TTD.

Statutory interpretation begins with the literal language of a statute. *Wernecke v. St. Maries Joint Sch. Dist. No. 401*, 147 Idaho 277, 282, 207 P.3d 1008, 1013 (2009). When interpreting the Worker's Compensation Act, this Court "liberally construe[s] its provisions in favor of the employee in order to serve the humane purpose for which it was promulgated." *Id*.

Idaho Code section 72-806 provides:

> A workman shall receive written notice within fifteen (15) days of any change of status or condition including, but not limited to, the denial, reduction or cessation of medical and/or monetary compensation benefits, which directly or indirectly affects the level of compensation benefits to which he might presently or ultimately be entitled.

I.C. § 72-806. The worker's compensation "statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings." *Wernecke*, 147 Idaho at 282, 207 P.3d at 1013. *Id*. Yet the Court must also "give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *Id*.

"Change" is defined as "the act or instance of making or becoming different." *Change*, THE NEW OXFORD AMERICAN DICTIONARY, 285 (2001). "Cessation" is defined as "a ceasing; an end." *Cessation*, THE NEW OXFORD AMERICAN DICTIONARY, 281 (2001). Black's Law Dictionary defines "affect" as "to produce an effect on; to influence in some way." *Affect*, BLACK'S LAW DICTIONARY, 65 (9th ed. 2009). Thus, section 72-806 can be read to require that a worker receive notice if his status becomes different due to the ending of monetary benefits, if that directly or indirectly influences the amount of benefits he is either currently or ultimately entitled to.

The Commission concluded that the statutory scheme did not appear to endorse the Defendants' argument that the different types of payments should be treated differently under section 72-806. Indeed, all that is required is "any change of status or condition, including . . . cessation of medical and/or monetary compensation benefits, which directly or indirectly affects

5

the level of compensation benefits to which he might presently or ultimately be entitled." I.C. § 72-806. The Commission found that Austin's level of benefits was affected because he had been receiving periodic payments of PPI benefits, and he received no further payments after the June 22, 2015, final payment. We agree. Austin's status changed when the Defendants sent his final payment of PPI benefits on June 22, 2015—no matter if Austin had previously been informed that the benefits would end—because the true ending date for his benefits changed. The importance of notice informing Austin of his amended status is highlighted by the fact that the Defendants ended Austin's payments before their scheduled date by issuing a final lump-sum payment accounting for seven weeks of benefits. This change "affect[ed] the level of compensation benefits to which [Austin] might presently or ultimately be entitled" because the change altered the one-year statute of limitations for Austin to pursue additional benefits, leading to the dispute before this Court today. I.C. § 72-706(3). As a result, we affirm the Commission's determination that the Defendants were required by Idaho Code section 72-806 to provide a NOCS within fifteen days of the final PPI payment.[1]

**B.** **The Commission properly held that Bio Tech's failure to issue a NOCS with the final payment constituted a "willful" violation under Idaho Code section 72-604.**

Next, the Defendants argue that the Commission wrongly determined that the Defendants had "willfully" failed to provide a NOCS with the final payment because the Commission failed to consider whether there were lawful grounds to excuse the Surety's failure to file a NOCS. The defendants argued that their substantial compliance with section 72-806 was enough to legally excuse the Defendants' failure to file a formal NOCS.

This Court has not construed "willful" for purposes of the tolling provision of Idaho Code section 72-604 in the context of a failure to issue proper notice under Idaho Code section 72-806. That said, we have considered whether conduct was willful in other contexts involving worker's compensation law. In *Meyer v. Skyline Mobile Homes*, we considered whether the claimant willfully withheld a material fact to obtain unemployment insurance benefits. 99 Idaho 754, 589 P.2d 89 (1979). There we recognized that through the legislature's presumed knowledge of the Court's prior interpretations of willful, that the meaning is "intended to disqualify those

---

[1] Idaho Code section 72-806 requires that a workman "receive written notice within fifteen (15) days of any change of status or condition. . . ." The Idaho Administrative Rules ensure that the worker receives such notice in a timely manner by mandating that "[a]ny notice to a worker required by Idaho Code, Section 72-806 shall be mailed within ten (10) days. . . ." IDAPA 17.02.08.061.03. *See infra*, p. 8.

claimants who purposefully, intentionally, consciously, or knowingly fail to report a material fact, not those whose omission is accidental because of negligence, misunderstanding or other cause." *Id*. at 761, 589 P.2d at 96. More recently, we explained that willfulness is "a willingness to commit the act, '[i]t does not require any intent to violate the law.'" *Current v. Wada Farms P'ship*, 162 Idaho 894, 899, 407 P.3d 208, 213 (2017) (quoting *Bell v. Idaho Dep't of Labor*, 157 Idaho 744, 747, 339 P.3d 1148, 1151 (2014)). As a result, "willfully" is synonymous with "intentionally," "designedly," or "without lawful excuse," and therefore not accidental. *Bell*, 157 Idaho at 747, 339 P.3d at 1151 (quoting *Meyer*, 99 Idaho at 761, 589 P.2d at 96). Stated another way, even one who "consciously or knowingly" commits an act has done so "willfully." *See Meyer*, *99* Idaho at 761, 589 P.2d at 96.

The Commission did not initially address the Defendants' argument that their conduct was not "willful"; however, in denying the Defendants' motion for reconsideration, the Commission noted:

> [A] finding of willfulness is implicit in our finding that the plain language of the statute requires a NOCS upon the cessation of any class of benefits. Therefore, we specifically conclude that Defendants' failure was willful as anticipated by Idaho Code § 72-604.

The Commission's conclusion accords with how this Court has interpreted "willfully" in the context of worker's compensation law. Willfulness does not require an intent to commit wrongdoing, but simply a "willingness to commit the act." *Current*, 162 Idaho at 899, 407 P.3d at 213. The Defendants are not claiming that they "accidentally" failed to include a NOCS with the final payment; rather, the Defendants' argument is that they did not have to provide any notice at that time. Defendants were aware of the requirement to provide Austin a NOCS form based on having done so on July 18, 2014. The Defendants' failure to provide another notice when Austin's payments ceased earlier than originally specified was done *willfully* under the statute. Thus, we affirm the Commission's decision that the Defendants "willfully" chose to send the June 22, 2015, final payment without a NOCS. If a surety willfully fails to provide a required NOCS, the one-year limitation of Idaho Code section 72-706(3) is tolled until a notice is filed. I.C. § 72-604. We hold that Austin's complaint was timely filed.

**C.      The Defendants did not substantially comply with the NOCS requirements of Idaho Code section 72-806.**

7

Defendants assert that they substantially complied with the NOCS requirements of Idaho Code section 72-806, and that substantial compliance is legally enough to excuse the Surety's failure to file an IC Form 8 NOCS when Austin received his final PPI payment under the tolling provision of Idaho Code section 72-604.

The Idaho Administrative Code provides insight for our analysis of this question. The following parameters for a valid notice under Idaho Code section 72-806 require:

> **01. Notice of Change of Status**. As required and defined by Idaho Code, Section 72-806, a worker shall receive written notice within fifteen (15) days of any change of statute or condition, including, but not limited to, whenever there is an acceptance, commencement, denial, reduction, or cessation of medical or monetary compensation benefits to which the worker might presently or ultimately be entitled. . . .
>
> **02. By Whom Given**. Any notice to a worker required by Idaho Code, Section 72-806 shall be given by: the surety if the employer has secured Workers' Compensation Insurance; or the employer if the employer if self-insured; or the employer if the employer carries no Workers' Compensation Insurance.
>
> **03. Form of Notice**. Any notice to a worker required by Idaho Code, Section 72-806 shall be mailed within ten (10) days by regular United States Mail to the last known address of the worker, as shown in the records of the party required to give notice as set forth above. The Notice shall be given in a format substantially similar to IC Form 8, available from the Commission and posted on the Commission's website at www.iic.idaho.gov.
>
> **04. Medical Reports**. As required by Idaho Code, Section 72-806, if the change is based on a medical report, the party giving notice shall attach a copy of the report to the notice.
>
> **05. Copies of Notice**. The party giving notice pursuant to Idaho Code, Section 72-806 shall send a copy of any such notice to the Industrial Commission, the employer, and the worker's attorney, if the worker is represented, at the same time notice is sent to the worker. The party giving notice may supply the copy to the Industrial Commission in accordance with the Commission's rule on electronic submission of documents.

IDAPA 17.02.08.061.

For these reasons, a NOCS must be "given in a format substantially similar to IC Form 8, available from the Commission and posted on the Commission's website at www.iic.idaho.gov."

8

IDAPA 17.02.08.061. IC Form 8 includes the following preliminary information: the name of the injured worker; his or her social security number; the worker's address, including city, state, and zip code; the date of the injury; the name of the employer; and the name of the insurance company. If the notice is informing the claimant that benefit payments will be stopped, it must also include the effective date and reason.

The Commission declined to rule on whether the Defendants substantially complied with the notice requirements of section 72-806 but noted "the check did contain most of the information provided in [IC] Form 8, but not in the same formatting." We disagree and do not find that the June 20, 2015 check substantially complied with the notice requirements of IC Form 8. First, the check did not explain that the reason for the "PPI Final Payment" was that the $18,694.50 amount was paid in full. Second, the check was dated June 22, 2015, but it reflected that the payment was "through July 3, 2015." It is unclear where the Defendants arrived at the July 3, 2015, date. The July 18, 2014, NOCS indicated that payments were to begin on August 1, 2014. If the Defendants had paid Austin 55 weeks of benefits for his 11% impairment rating those benefits would have ended on August 21, 2015. The Defendants began making payments two weeks early, on July 19, 2014, which means Austin's benefits should have terminated on August 8, 2015. Thus, even though the Defendants paid seven weeks of benefits with the final check, Austin's benefits should have been through August 8, 2015, not July 3, 2015. These inconsistencies make it unclear what effective date payments were considered to have <u>stopped</u> in order to allow Austin the ability to determine the correct statute of limitation. Finally, the Defendants were also required to provide a copy of the notice to the Commission and failed to do so. IDAPA 17.02.08.061.

Since the Defendants did not substantially comply with Idaho Code section 72-806 by their failure to provide all of the material information IC Form 8 requires when benefits are stopped (the effective date and the reason), we do not reach the issue of whether substantial compliance with the notice requirements under different facts could negate a finding that there was a "willful" violation for tolling Idaho Code section 72-604. The Defendants' actions here do not reach that threshold, even if substantial compliance could be a proper consideration in another case.

In addition, because we affirm the Commission's decision that Austin's complaint was timely, we do not reach Austin's alternative argument that the complaint was timely because it

9

was filed within one year of the date that the July 18, 2014, NOCS indicated the last payment of income benefits would occur.

## VI. CONCLUSION

The Commission's decision is affirmed. Costs on appeal are awarded to Austin.


Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER CONCUR.