# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46860

WILLIAM M. WITTKOPF,

  Claimant-Appellant,

v.

STEWART'S FIREFIGHTER FOOD
CATERING, INC., Employer; BON
APPETIT MANAGEMENT, CO., Major
Base Employer,

  Respondents,

and

IDAHO DEPARTMENT OF LABOR,

  Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2020 Term

Opinion Filed: February 19, 2021

Melanie Gagnepain, Clerk

---

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

William W. Wittkopf, Ontario, Oregon, Pro Se, Appellant.

Stewart's Firefighter Food Catering, Redmond, Oregon, Pro Se, and
Bon Appetit Management Co., Boise, Pro Se, Respondents.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent Idaho Department
of Labor. Douglas A. Werth.

---

BURDICK, Justice.

This case arises from an Idaho Industrial Commission determination denying an application for unemployment benefits. William M. Wittkopf appeals pro se from the Commission's determination that he is ineligible for unemployment benefits because he voluntarily quit his job without good cause and he willfully made a false statement or willfully failed to report a material fact in his unemployment application. On appeal, Wittkopf challenges the factual findings made by the Commission and argues it violated his right to due process by taking into consideration the fact that he voluntarily terminated his employment approximately two and a half years prior to applying for unemployment benefits.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Wittkopf is a cook whose primary employer since approximately 2009 has been Bon Appetit Management Co. ("Bon Appetit"). Bon Appetit provides food and catering services for an educational institution. When the educational institution goes on "break" several times a year, Wittkopf is either temporarily laid off or has his hours reduced. During those periods, he seeks other employment or files for unemployment benefits. During the summer wildfire seasons of 2015 and 2016, Wittkopf worked for Stewart's Firefighter Food Catering, Inc. ("Stewart's Firefighter"), a company that contracts with the federal government to provide mobile food catering services to firefighters in field camps.

Immediately preceding Wittkopf's 2016 employment at Stewart's Firefighter, he worked at Bon Appetit from November 23, 2015, to May 17, 2016. After Wittkopf was temporarily laid off from Bon Appetit for "break," he opened a new unemployment claim on May 21, 2016. On May 31, 2016, Wittkopf began working full time at Stewart's Firefighter until he quit his job on August 19, 2016. Wittkopf reopened his unemployment claim on September 14, 2016, but did not update his work history to include his employment at Stewart's Firefighter from May 31, 2016, to August 19, 2016.

In March of 2018, Wittkopf opened another claim for unemployment benefits when his hours at Bon Appetit were reduced. He filed an additional claim on October 16, 2018. Wittkopf failed to update his work history to include his 2016 employment at Stewart's Firefighter on both occasions. During an audit of Wittkopf's most recent claim, IDOL contacted Stewart's Firefighter to verify his weekly earnings while employed there in 2015. When Stewart's Firefighter responded, it also indicated that Wittkopf had voluntarily left during the 2016 fire

2

season. After reviewing Wittkopf's application and following up with Stewart's Firefighter, IDOL's Benefit Payment Control Supervisor discovered that Wittkopf worked for Stewart's Firefighter in 2016 until he walked off the job and had subsequently failed to disclose his employment or reason for separation to IDOL.

Based on this discovery, IDOL determined that Wittkopf was ineligible for unemployment benefits because he quit his employment at Stewart's Firefighter without good cause, and because he willfully made a false statement or willfully failed to report a fact material to his claim for unemployment benefits. Wittkopf appealed the determination to the IDOL Appeals Examiner who held a telephonic hearing where Wittkopf, Melissa Huyck (IDOL's Benefit Payment Control Supervisor), Carolyn Stewart (vice-president and unit manager for Stewart's Firefighter), and Craig Toman (Wittkopf's direct supervisor at Stewart's Firefighter) testified. After the hearing, the Appeals Examiner issued a written decision, concluding that Wittkopf did not have good cause to quit his employment at Stewart's Firefighter and willfully made false statements or willfully failed to report material facts in order to receive unemployment benefits. Wittkopf appealed that decision to the Commission, which reviewed it de novo. On January 31, 2019, the Commission entered a written decision and order affirming the decision of the Appeals Examiner.

Wittkopf timely appealed to this Court.

## II. ISSUES ON APPEAL

1. Did the Commission violate Wittkopf's right to due process by considering the fact that he voluntarily quit his job at Stewart's Firefighter in determining him ineligible for unemployment benefits?

2. Does substantial and competent evidence support the Commission's decision to deny Wittkopf unemployment benefits?

## III. STANDARD OF REVIEW

This Court upholds decisions of the Industrial Commission unless (1) the Commission has acted without jurisdiction or in excess of its powers; (2) the Commission's findings of fact are not based on substantial and competent evidence; (3) the findings of fact, order or award were procured by fraud; (4) as a matter of law, the findings of fact do not support the order or award. When this Court reviews a decision of the Industrial Commission, we exercise free review over questions of law. However, our review of questions of fact is limited to a determination of whether substantial and competent evidence supports the Commission's findings. Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. Because the

3

Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous.

*Locker v. How Soel, Inc.*, 151 Idaho 696, 699, 263 P.3d 750, 753 (2011) (quotations and internal citations omitted).

## IV. ANALYSIS

### A. Wittkopf has not made a cogent argument on appeal regarding his right to due process.

Wittkopf argues on appeal that the Commission violated his right to due process in determining him ineligible for unemployment benefits because his employment at Stewart's Firefighter and his voluntary termination of said employment occurred over two and a half years prior.

Idaho Code section 72-1368(3)(b) provides the timeframe in which IDOL may review a claimant's eligibility for unemployment benefits:

> If the department has reason to believe at any time within five (5) years from the week ending date for any week in which benefits were paid that a claimant was not eligible for benefits, the department may investigate the claim and on the basis of facts found issue a determination denying or allowing benefits for the week(s) in question. If the department determines a claimant was not entitled to benefits received, the department shall issue a determination requiring repayment of the overpaid benefits, and assess any applicable penalties and interest.

I.C. § 72-1368(3)(b).

In this case, IDOL's Appeals Examiner determined that Wittkopf was ineligible for unemployment benefits from September 11, 2016, to September 17, 2016; March 18, 2018, to March 24, 2018; and November 4, 2018, to November 2, 2019. The Appeals Examiner made this determination around December 19, 2018. Wittkopf voluntarily terminated his employment at Stewart's Firefighter on August 19, 2016. Therefore, IDOL's eligibility determination was made within the five-year period prescribed by statute.

Wittkopf does not challenge the constitutionality of Idaho Code section 72-1368(3)(b) on appeal. Nor does he provide any other cogent argument as to how his right to due process was violated by the timing of the Commission's determination. "Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Randall v. Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975)). Consequently, where a party only mentions an issue in passing, and does not support it by any cogent argument or authority, it will not be considered by this Court. *Id.* (citation

4

omitted). Accordingly, we need not consider whether Wittkopf's right to due process was violated.

## B. Substantial and competent evidence supports the Commission's decision to deny Wittkopf unemployment benefits.

The Commission determined that Wittkopf was ineligible for unemployment benefits based upon two findings: (1) that Wittkopf voluntarily quit his job at Stewart's Firefighter without good cause in connection with his employment; and (2) that Wittkopf willfully made a false statement or willfully failed to report a material fact to obtain unemployment benefits. We address each determination in turn.

### 1. Substantial and competent evidence supports the Commission's finding that Wittkopf voluntarily quit his job without good cause in connection with his employment.

Under Idaho Code section 72-1366, a claimant is ineligible for unemployment benefits if "he left his employment voluntarily without good cause connected with his employment." I.C. § 72-1366(5). Wittkopf does not dispute that he left his 2016 employment at Stewart's Firefighter voluntarily. Therefore, the remaining question is whether Wittkopf quit for good cause in connection with his employment. What constitutes "good cause" as used in Idaho Code section 72-1366 is a factual determination made by the Commission on a case-by-case basis. *Edwards v. Indep. Servs., Inc.*, 140 Idaho 912, 915, 104 P.3d 954, 957 (2004). In addition to showing good cause, a claimant must have explored all reasonable alternatives before quitting. *Id.* (citing *Ellis v. Nw. Fruit & Produce*, 103 Idaho 821, 823, 654 P.2d 914, 916 (1982)). The policy behind this requirement is to "encourage the employer and the employee to adjust their differences and thus avoid interrupting the employment." *Ellis*, 103 Idaho at 823, 654 P.2d at 916 (quoting *Custom Meat Packing Co. v. Martin*, 85 Idaho 374, 384, 379 P.2d 664, 670 (1963), *overruled on other grounds by Parker v. St. Maries Plywood*, 101 Idaho 415, 614 P.2d 955 (1980)).

"Good cause is governed by the standard of reasonableness as applied to the average person, and not to the supersensitive." *Higgins v. Larry Miller Subaru-Mitsubishi*, 145 Idaho 1, 4, 175 P.3d 163, 166 (2007) (citing *Edwards*, 140 Idaho at 915, 104 P.3d at 957). Therefore, "[i]n order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial[,] not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances." *Id.* (quotation marks and citation omitted). It is the claimant's burden to prove he quit for good cause. *Id.* (citing *Moore v. Melaleuca, Inc.*, 137 Idaho 23, 28, 43 P.3d 782, 787

(2002)). To show a connection to employment, a claimant must prove his reasons for leaving employment arose from "working conditions, job tasks, or employment agreement." IDAPA 09.01.30.450.02.

Wittkopf argues that he left Stewart's Firefighter because the kitchen was an unsafe work environment. Specifically, he points to safety concerns in connection with the on-site fire extinguishers, the back door to the kitchen, and food safety. He also argues that a fryer fire in 2015 and drug use among other employees gave him "no choice but to quit." Workplace safety concerns can constitute good cause to voluntarily terminate employment if left unaddressed. *See Owen v. Newberg Cedar*, 101 Idaho 77, 79, 609 P.2d 144, 146 (1980) ("Owen did not carry or satisfy that burden of showing conformance with the statute, i.e., that her health, *safety* or morals would be jeopardized or that the conditions of the night shift would have been substantially less favorable to Owen.") (emphasis added).

In this case, the Commission weighed Wittkopf's testimony against the testimony of IDOL's witnesses, summarizing the conflicting testimony as follows:

> [Wittkopf] contends that throughout his employment, numerous employees were on methamphetamine and other drugs, and the kitchen equipment was old and poorly maintained. According to [Wittkopf], this resulted in very unsafe working conditions. [Wittkopf] indicated that he mentioned his concerns to [Stewart's Firefighter] on numerous occasions and that nothing was ever done to address his concerns. [Wittkopf] alleges that he finally quit his job because [Stewart's Firefighter] was forcing him to work in unsafe conditions.
>
> Although unsafe working conditions can provide a claimant with good cause to quit, the claimant bears the burden of proving the existence of those conditions. While [Wittkopf] maintains that the equipment was old and in poor condition, and that numerous employees were using methamphetamine, [Stewart's Firefighter] denies the allegations. [Stewart's Firefighter's] representative, Susan Stewart, indicated that the equipment was regularly checked by state officials and was properly certified throughout the time [Wittkopf] was working for [Stewart's Firefighter]. She further indicated that if there were any problems that arose with the equipment, they were fixed immediately. Additionally, Stewart indicated that they have a "zero tolerance" policy against drug use, that she is trained and certified to perform drug testing, and that she regularly tests employees if there is suspicion of drug use. Stewart maintains that the individuals [Wittkopf] accused of using drugs were in fact cleared of suspicion of drug use.

Reasoning that there was no other evidence in the record to lend additional credibility to either Wittkopf or IDOL's witnesses, the Commission found the testimony regarding the working conditions at the camp equally credible. Because the burden of proof was on Wittkopf

6

to establish that unsafe working conditions gave him good cause to terminate his employment, the Commission determined that Wittkopf had failed to carry his burden.

We conclude that the Commission's determination is supported by substantial and competent evidence. Wittkopf and the witnesses for Stewart's Firefighter painted two entirely different pictures when testifying about the conditions at the 2016 fire camp. Wittkopf described widespread methamphetamine use, propane bottles being purposely left on, and old, faulty kitchen equipment that was not being properly maintained. In contrast, Carolyn Stewart testified that Stewart's Firefighter is enrolled in a random drug testing program and that she also drug tests specific employees if, based on her training, she suspects an employee of drug use. Other than Wittkopf's complaints about drug use, Stewart testified that she had no suspicions that her employees were using methamphetamine at that time. She further testified that the propane system was inspected and recertified annually by a professional propane company, the fire extinguishers and ancillary system for fire suppression were inspected and recertified annually and semi-annually respectively, and the fire extinguishers were further inspected by trained employees on a monthly basis. Finally, she testified that government safety officers walked through the fire camp twice daily to ensure that all of their equipment was in working order. In short, Stewart testified that "[e]verything was working properly." The only issue at the fire camp identified by Stewart was a conduit that had fallen off the ancillary system, but the issue was cosmetic in nature and did not interfere with the operation of the system.

Based on the testimony just discussed, we cannot say that the Commission's findings regarding credibility were clearly erroneous. The Commission was presented with conflicting testimony, describing two versions of the same fire camp, and found the testimony equally credible. Because the burden to establish good cause was on Wittkopf, the Commission's determination that Wittkopf did not terminate his employment for good cause is supported by substantial and competent evidence.

       i.    *Substantial and competent evidence supports the Commission's finding that Wittkopf failed to demonstrate he had no reasonable alternative to quitting.*

In addition to determining that Wittkopf failed to establish good cause, the Commission found that Wittkopf did not adequately explore reasonable alternatives prior to voluntarily terminating his employment. For a claimant who voluntarily terminates his employment to be eligible for unemployment benefits he must demonstrate that he explored all reasonable alternatives before quitting. *Edwards*, 140 Idaho at 915, 104 P.3d at 957 (citing *Ellis*, 103 Idaho

at 823, 654 P.2d at 916). The policy behind this requirement is to "encourag[e] an employer and employee to work out their differences without interrupting the employment relationship." *Id.* (citing *Hart v. Deary High Sch.*, 126 Idaho 550, 553, 887 P.2d 1057, 1060 (1994)).

The Commission concluded that Wittkopf failed to exhaust the reasonable alternatives available to him before voluntarily terminating his employment because he failed to report the equipment safety concerns to the on-site federal safety officer. Specifically, the Commission reasoned,

> if [Wittkopf] was not satisfied with the manner in which [Stewart] addressed his concerns, there was a federal safety officer on site at the camp. [Wittkopf] could have reached out to him regarding his concerns at any point. For whatever reasons, [Wittkopf] chose not to do so . . . . [Wittkopf] clearly had other avenues available to him to address his concerns and failed to follow through with those opportunities.

This finding is supported by substantial and competent evidence. Wittkopf testified at the telephonic hearing that he did not report the issues to the federal safety officers because he "wasn't really trying to get [them] in trouble." Wittkopf's direct supervisor testified that Wittkopf had the option to report his concerns to the government officers. As such, the Commission's determination that Wittkopf failed to demonstrate that he pursued all reasonable alternatives prior to terminating his employment is supported by substantial and competent evidence.

2. Substantial and competent evidence supports the Commission's finding that Wittkopf willfully made a false statement or willfully failed to report a material fact to obtain unemployment benefits.

The Commission determined that Wittkopf willfully made a false statement or willfully failed to report a material fact in connection with three unemployment claims because he did not disclose his 2016 employment at, and subsequent separation from, Stewart's Firefighter. Wittkopf argues on appeal that his failure to update his work history on each application for unemployment benefits was a simple mistake.

Under Idaho Code section 72-1366(12),

> [a] claimant shall not be entitled to benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits. The period of disqualification shall commence the week the determination is issued. The claimant shall also be ineligible for waiting week credit and shall repay any sums received for any week for which the claimant received waiting week credit or benefits as a result of having willfully made a false statement or willfully failed to report a material fact.

8

> The claimant shall also be ineligible for waiting week credit or benefits for any week in which he owes the department an overpayment, civil penalty, or interest resulting from a determination that he willfully made a false statement or willfully failed to report a material fact.

I.C. § 72-1366(12). "[A] fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 760, 589 P.2d 89, 95 (1979). Here, Wittkopf's employment and voluntary separation from Stewart's Firefighter was a material fact because it was relevant to his eligibility for benefits under Idaho Code section 72-1366(5).

Willfulness is defined as "a willingness to commit the act, [i]t does not require any intent to violate the law." *Woolley v. Bridge St., Inc.*, 166 Idaho 559, 563, 462 P.3d 87, 91 (2020) (internal quotations omitted) (quoting *Austin v. Bio Tech Nutrients*, 165 Idaho 248, 252, 443 P.3d 262, 266 (2019)). "'[W]illfully' is synonymous with 'intentionally,' 'designedly,' or 'without lawful excuse,' and therefore not accidental." *Id.* (citations omitted). However, "when a claimant knowingly omits a material fact, it is not willful unless it was 'knowing' in the sense that the claimant understood the necessity for reporting that particular fact." *Id.* at 563–64, 462 P.3d at 91–92 (citing *Smith v. Dep't of Emp't*, 107 Idaho 625, 627–28, 691 P.2d 1240, 1242–43 (1984)).

This Court has previously upheld a determination by the Commission that a claimant's actions were willful where the claimant was aware of the regulations governing unemployment insurance and nonetheless failed to disclose two weeks of employment. *Gaehring v. Dep't of Emp't*, 100 Idaho 118, 118–19, 594 P.2d 628, 628–29 (1979). In *Gaehring*, a seasonal truck driver, who mailed in weekly unemployment claim certifications, filed certifications for two consecutive weeks in which he had actually worked. *Id.* at 118, 594 P.2d at 628. After the Department discovered the discrepancy, it determined that the truck driver had "wil[l]fully made a false statement or representation and wil[l]fully failed to report a material fact in order to obtain benefits." *Id.* The truck driver maintained that he did not intend to defraud the Department and that he filed claims for the two weeks at issue by mistake. *Id.* at 119, 594 P.2d at 629. The Commission upheld the decision of the Department. *Id.* On appeal, this Court affirmed, reasoning that knowledge of the regulations governing unemployment, followed by failure to file accurate certifications for two successive weeks and the subsequent failure to correct the inaccurate certifications, was sufficient to support the Commission's findings. *Id.* Accordingly, knowledge of the reporting requirements followed by successive failures to accurately report

periods of employment when making unemployment benefit claims are sufficient to constitute willfulness for the purposes of Idaho Code section 72-1366(12).

Here, the Commission reasoned that Wittkopf willfully made a false statement or willfully failed to report a material fact in order to obtain benefits because he was intimately familiar with the unemployment claim process, was informed of the requirement that he submit a complete work history, and certified that he understood the requirements, but nonetheless failed to disclose his employment and voluntary separation from Stewart's Firefighter.

Substantial and competent evidence supports the Commission's determination. Wittkopf received instructions for filing unemployment claims on numerous occasions. Each application for unemployment benefits included an instruction explaining that work history is used to determine eligibility for unemployment benefits and a section for the claimant to certify that he included a complete work history. Wittkopf certified on each application that he agreed to the work history reporting requirements and checked a box indicating that all information provided by him was "true, correct, and complete." Nonetheless, Wittkopf failed to disclose his 2016 employment at Stewart's Firefighter on any of the unemployment applications.

Wittkopf knew or should have known of the requirement that he completely and accurately report his work history on his unemployment applications. Under *Gaehring*, Wittkopf's failure to report his work history accurately despite knowledge that he was required to do so is sufficient to support the Commission's determination that Wittkopf willfully made a false statement or willfully failed to report a material fact in order to obtain benefits.

## V. CONCLUSION

Based on the foregoing, we conclude that (1) Wittkopf failed to provide a cogent argument on appeal regarding whether his right to due process was violated, (2) the Commission's determination that Wittkopf voluntarily terminated his employment at Stewart's Firefighter without good cause and without exhausting all reasonable alternatives is supported by substantial and competent evidence, and (3) the Commission's determination that Wittkopf willfully made a false statement or willfully failed to report a material fact in order to obtain benefits is supported by substantial and competent evidence. Accordingly, the Commission's decision and order denying Wittkopf's application for unemployment benefits is affirmed. Costs on appeal are awarded to IDOL.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER **CONCUR.**

10